Opinion issued April 5, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-09-00728-CV

———————————

**PETER FAZIO, SHARI FAZIO, AND ERIC FAZIO, Appellants**

**V.**

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellees**

**\*\*\***

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellants**

**V.**

**PETER FAZIO, Appellee**

On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2004-65110

**EN BANC OPINION**

In this suit arising from the sale of land, we examine the appropriate measure of damages for a sale obtained through fraudulent inducement. A jury concluded that the seller of the land had failed to disclose material information to the buyer about the financial state of a commercial tenant who leased the land. But the jury further concluded that the buyers suffered nothing in damages proximately caused by the fraud, measured at the time of the sale, and it awarded no damages in connection with the costs incurred with the termination of the tenant's lease, nor the legal fees the buyers incurred due to the tenant's bankruptcy, nor the interest expense the buyers incurred on loans they obtained to facilitate the purchase. The trial court entered a take-nothing judgment in favor of the seller.

A majority of a panel of our court reversed the trial court, concluding that the buyers were nonetheless entitled to damages based on the loss that the buyers took when they sold the land three years later. The majority also concluded, with one justice dissenting, that the buyers did not disclaim reliance on the seller's promise of full disclosure in a letter of intent that the seller had signed before the sale. The seller moved for rehearing and rehearing en banc. The panel majority granted the motion for rehearing and revised its opinion, mooting the en banc request, but its disposition remained the same. The seller moved again for en banc consideration. Concluding that the case warranted en banc review, a majority of

our court has voted to reconsider this case. *See* TEX. R. APP. P. 49.7. We withdraw the panel's August 16, 2012 opinion on rehearing and judgment, and substitute this opinion and judgment in its place.

We hold that the trial court properly entered a take-nothing judgment, because the jury found that no damages were proximately caused by the fraud, measured at the time of the sale, and it found no incidental or consequential damages relating to the sale. We further hold that the trial court properly denied the seller's request for attorney's fees as the prevailing party, because the parties' contract did not provide for a recovery for attorney's fees incurred in defense against claims of fraud. We therefore affirm.

**Background**

Peter, Shari, and Eric Fazio sued Cypress/GR Houston I, L.P., Cypress/GR Houston, Inc., and Cypress Equities, Inc. (collectively, Cypress) for fraudulent inducement, relating to the Fazios' purchase, in October 2003, of commercial land located on the frontage road of Interstate 10 in Houston. At that time, Garden Ridge Pottery leased the site for one of its retail stores.

After identifying the land as an investment prospect, the Fazios notified Cypress of their interest in purchasing it. In early September 2003, the parties executed a letter of intent, signed by Peter Fazio and a representative of Cypress Equities, in which Cypress agreed to allow the Fazios to investigate "all aspects of

3

the Property" and further agreed to provide the Fazios with "all information in [Cypress's] possession." The Fazios and their brokers subsequently conducted due diligence and inspected the property. As part of this process, they requested "every scrap of paper" that Cypress had regarding the property. The Fazios reviewed multiple appraisals of the property; researched the property's primary tenant, Garden Ridge; investigated the lease terms; reviewed Garden Ridge's audited financial statements; and contacted Garden Ridge's CFO for an assessment of Garden Ridge's financial condition. The Fazios' investigations revealed that Garden Ridge was restructuring and struggling financially, but that Garden Ridge had recently secured a line of credit for its operations to continue through the 2003 Christmas season. During their discussions with Garden Ridge's CFO, the CFO was optimistic that Garden Ridge could work through its financial difficulties. The Fazios' own lenders were not as certain, and told the Fazios that Garden Ridge was not a viable long-term tenant. Garden Ridge's audited financial statements, which the Fazios reviewed, showed that Garden Ridge had defaulted on its debt covenants and was in the process of corporate restructuring.

Despite its agreement in the letter of intent to provide to the Fazios "all information in its possession," Cypress did not disclose to the Fazios that, in February 2003, Garden Ridge had sent a letter to Cypress stating that it was "restructuring" and needed "to reduce our occupancy costs at your premises."

4

Cypress also did not disclose that Garden Ridge had sought a 30% rent reduction for the I-10 property as well as a similar reduction for another property owned by a separate Cypress entity and leased to Garden Ridge. Finally, Cypress failed to disclose that in early September 2003, Cypress's own lender was concerned about the financial condition of Garden Ridge and had asked that Cypress's President, Chris Maguire, execute a personal guaranty for the $5,704,000 loan that it had made to Cypress that had been formerly secured only by the property. Maguire eventually signed the guaranty—on September 25, one day after Cypress sold the land to the Fazios.

The parties executed the final purchase agreement on September 24, 2003 for a price of $7,667,000. The agreement contained various provisions disclaiming the Fazios' reliance on representations made by Cypress to the Fazios.

Garden Ridge paid its rent in October, November, and December, but it defaulted on its rent in January 2004, and shortly thereafter declared bankruptcy. Once in Chapter 11 bankruptcy protection, Garden Ridge rejected its lease. The Fazios attempted, unsuccessfully, to re-lease the land. They later sold it in 2007 for $3,750,000.

The jury found that Cypress Equities, but neither of the other Cypress entities, had defrauded the Fazios. It attributed 100% responsibility for any harm to

5

the Fazios to Cypress Equities, but it found that the Cypress entities operated as a single business enterprise.

The trial court instructed the jury on two measures of direct damages, and various measures of incidental and consequential damages. The trial court's two measures for actual damages were distinctly different: Jury question 2(1) instructed the jury to determine "[t]he difference between the price the Fazios paid for the Property and the amount they received when they sold the Property"; to this question, the jury answered $3,961,524.60, which is the actual difference in the two amounts. Question 2(2), in contrast, instructed the jury to determine "the difference, if any, between the price the Fazios paid for the Property and the value of the Property at the time the Purchase Agreement was executed"; to this question, the jury answered $0. In response to each of four instructions on incidental and consequential damages, the jury also answered $0. But, finding clear and convincing evidence of fraud, the jury awarded $667,000 in exemplary damages.

Both parties moved for judgment in the trial court. Among other grounds, Cypress argued that the Fazios were not entitled to a judgment based on the jury's answer to question 2(1) because it was an improper measure of damages, and that it, Cypress, was entitled to judgment based on the jury's answer to question 2(2), in which the jury awarded nothing under the proper measure of damages. The Fazios

6

requested judgment on the jury's verdict for the amount the jury found in answer to question 2(1), plus exemplary damages. After extensive post-verdict briefing, the trial court entered a take-nothing judgment for Cypress and denied Cypress's request for attorney's fees.

The Fazios appeal the trial court's judgment against them on their claim for fraudulent inducement, contending that the trial court erred in disregarding the jury's liability and damages findings in their favor. They contend that the trial court instead should have disregarded the damages questions the jury found against them. Cypress also appeals, challenging the trial court's denial of its motion for attorney's fees.

## Damages

### A. Standard of Review

The Fazios challenge the trial court's judgment disregarding question 2(1), arguing that the question was a proper measure of damages. A trial court should disregard a jury finding if the jury question to which the finding responds is legally defective; the answer to a legally defective question is immaterial to the judgment. *See Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Similarly, a trial court should disregard a jury finding if the evidence is legally insufficient to support it, or if a directed verdict would have been proper because a

7

legal principle precludes recovery. TEX. R. CIV. P. 301; *see Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Williams*, 137 S.W.3d at 124; *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

## B.  Measuring Direct Damages

There are two measures of direct damages in a fraud case: out-of-pocket and benefit-of-the-bargain. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997)). Out-of-pocket damages measure the difference between the amount the buyer paid and the value of the property the buyer received. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984). Benefit-of-the-bargain damages measure the difference between the value of the property as represented and the actual value of the property. *Id.* Both measures are determined at the time of the sale induced by the fraud. *Id.*; *Arthur Andersen*, 945 S.W.2d at 817; *Woodyard v. Hunt*, 695 S.W.2d 730, 733 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Highland Capital Mgmt., L.P. v. Ryder Scott Co.,* No.01-10-00362-CV, 2012 WL 6082713, at *7–8 (Tex. App.—Houston [1st Dist.] Dec. 6, 2012, no pet. h.).

Losses that arise after the time of sale may be recoverable as consequential damages in appropriate cases. *Formosa Plastics*, 960 S.W.2d at 49 n.1 (citing

8

*Arthur Andersen*, 945 S.W.2d at 817). Consequential damages must be foreseeable and directly traceable to the misrepresentation and result from it. *Arthur Andersen*, 945 S.W.2d at 816. An investor may not "shift the entire risk of an investment to a defendant who made a misrepresentation" if the loss is unrelated to the misrepresentation and due to market fluctuations or the chances of business. *Id.* at 817; *see Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098 (Tex. 1938). Jury instructions on consequential damages must be explicitly premised on findings that the losses were foreseeable and directly traceable to the misrepresentation. *El Paso Dev. Co. v. Ravel*, 339 S.W.2d 360, 366–67 (Tex. App.—El Paso 1960, writ ref'd n.r.e.); *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 464 (Tex. App.—Dallas 1988, writ denied).

The jury instructions in this case included two questions on direct damages, questions 2(1) and 2(2). Jury question 2(1) instructed the jury to determine the difference between the actual price that the Fazios paid for the property and the actual price at which they sold it more than three years later, without consideration of any fluctuations in value absent any fraud. Because the question does not isolate the reduction in value attributable to the fraud, it asks a math word problem of basic subtraction, and is not a proper measure of damages.

In contrast, jury question 2(2) has it right, because that question parallels the rule for calculating out-of-pocket damages. Question 2(2) properly instructed the

9

jury to determine the difference between the fraud-induced price that the Fazios paid for the property and the actual value of the property they received when they purchased it. *See Leyendecker*, 683 S.W.2d at 373; *Arthur Andersen*, 945 S.W.2d at 817. And, the question correctly focused the jury on the time of the sale, because direct damages for fraud, including out-of-pocket damages, are properly measured at the time of the sale induced by the fraud—in this case, when the purchase agreement was executed—and "not at some future time." *Woodyard*, 695 S.W.2d at 733; *see Leyendecker*, 683 S.W.2d at 373; *Arthur Andersen*, 945 S.W.2d at 817. The jury responded that such damages were $0. It found other sorts of incidental and consequential damage to be $0 as well, in questions 2(3), 2(4), 2(5), and 2(6). The Fazios did not challenge the legal sufficiency of any of these findings.

The Fazios contend, and the dissents agree, that jury question 2(1) instructed the jury on a proper measure of damages, and thus the trial court erred in disregarding it. The dissent cites *Henry S. Miller Co. v. Bynum* to support its position that fraud damages need not be measured at the time of sale, but may be measured as the loss on the Fazios' investment three years after the sale. 836 S.W.2d 160, 162–63 (Tex. 1992). But more than a decade ago, our court cast a similar erroneous interpretation of *Bynum* to hold that the plaintiff in a fraud action could recover the loss on its investment, and not merely time-of-sale damages, when the plaintiff invested in a business that went bankrupt just over a year later.

10

The case was *Arthur Andersen & Co. v. Perry Equip. Corp.*, and the Texas Supreme Court reversed our court. *See* 898 S.W.2d 914 (Tex. App.—Houston [1st Dist.] 1995), *rev'd*, 945 S.W.2d 812 (Tex. 1997). In *Arthur Andersen,* the Texas Supreme Court expressly rejected such an interpretation, holding that, under the common law measure of fraud damages, direct damages must be measured at the time of the sale that induced the fraud. *Arthur Andersen*, 945 S.W.2d at 817. It further held that losses beyond the difference between the amount the plaintiff paid and the value it received at the time of sale could be recovered only as consequential damages. *Id.* Jury question 2(1) does not measure damages that were foreseeable and directly traceable to the misrepresentation, and thus, as the Fazios concede, was not an instruction on consequential damages. *See Ravel*, 339 S.W.2d at 366–67. The jury found $0 damages in response to four measures of incidental and consequential damages on which it was instructed.

Because jury question 2(1) did not instruct the jury on a valid measure of damages, and the jury found zero in damages in response to the proper instructions on direct and consequential damages, the trial court properly disregarded the damages found in response to question 2(1) and accorded judgment based on the jury's zero damages finding in answer to questions 2(2) through 2(6).

## C. Rescission Damages

The Fazios also contend that jury question 2(1) instructs the jury on a rescission or restitution measure of damages. Out-of-pocket damages, if properly measured, are restitution damages. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (per curiam). Rescission is a type of remedy in a fraud claim, but it is not a proper remedy if the amount the plaintiff pays for the property is equal to its value at the time the plaintiff purchased the property. *Bryant v. Vaughn*, 33 S.W.2d 729, 730 (Tex. 1930) (holding that plaintiff had no right to rescind in fraud action where jury found that value of property received by plaintiff was equal to amount plaintiff paid for property); *see also Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) ("[A] rescission award requires a showing of actual damages."); *Grundmeyer v. McFadin*, 537 S.W.2d 764, 769 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.); *Tex. Indus. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 327 (Tex. Civ. App.—San Antonio 1958, writ ref'd). A plaintiff seeking to rescind a transaction induced by fraud "must surrender any benefits received" in the transaction, as "rescission is not a one-way street. It requires a mutual restoration and accounting, in which each party restores property received from the other." *Cruz*, 364 S.W.3d at 824, 826 (citing *Tex. Emp'rs Ins. Ass'n v. Kennedy*, 143 S.W.2d 583, 585 (1940)).

Jury question 2(2) properly instructed the jury on out-of-pocket damages. In finding no out-of-pocket damages in response to that question, the jury found no restitution damages. *See Sonnichsen*, 221 S.W.3d at 636. The jury's finding of no actual damages—that the amount the Fazios paid for the property equaled the value of the property when the Fazios purchased it, and that the Fazios suffered no consequential damages—precludes a money judgment based on a rescission theory. *See Bryant*, 33 S.W.2d at 730; *Cruz*, 364 S.W.3d at 823. Pursuant to a proper measure of rescission damages, the Fazios would have to reduce any amount of damages by whatever benefit they received in the transaction. *See Cruz*, 364 S.W.3d at 824. As the jury found that the Fazios received property equal in value to what they paid for it, and that the fraud did not proximately cause money damages under a proper measure, rescission is not a supportable remedy. *See id.* Question 2(1), in any event, does not ask about fraud-induced losses, albeit at a later time; rather, it asked the jury to mechanically subtract the price for which the Fazios sold the property three years later from the original purchase price. We hold that the trial court properly disregarded the jury's answer to question to 2(1), as it did not measure rescission or restitution damages. *Spencer*, 876 S.W.2d at 157 (holding that jury question is immaterial and jury's answer should be disregarded if question is legally improper).

## D. Exemplary Damages

Finally, because the jury found no direct or consequential damages, the Fazios could not recover exemplary damages. *See Wright v. Gifford-Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex. 1987) ("When a jury fails to find a plaintiff has sustained actual damages, the plaintiff is foreclosed from recovering exemplary damages."); *see also Sec. Inv. Co. of St. Louis v. Fin. Acceptance Corp.*, 474 S.W.2d 261, 270 (Tex. Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). The trial court therefore properly disregarded the jury's award of exemplary damages.

## Attorney's Fees

Cypress requested that the trial court award it attorney's fees pursuant to section 7.3 of the purchase agreement, which requires,

> [i]n the event either party hereto is required to employ an attorney in connection with claims by one party against the other arising from the operation of this Agreement, the non-prevailing party shall pay the prevailing party all reasonable fees and expenses, including attorney's fees incurred in connection with such transaction.

The Fazios sued Cypress for common-law fraud, statutory fraud in a real estate transaction, and fraudulent inducement, but not for breach of contract. The trial court directed a verdict on the first two fraud claims, leaving the jury to decide only the fraudulent inducement claim. Cypress presented evidence that its

attorney's fees through judgment in the trial court were $987,934.64 and its expenses were $53,703.58. The trial court denied Cypress's request for fees.

Although the Fazios' claims against Cypress sound in tort, Cypress contends that it may avail itself of the contractual remedy of attorney's fees, because the tort claims asserted against it should be read to "arise from the operation of" the purchase agreement. The Fazios respond that Cypress reads the contract too broadly, and the provision at issue cannot require it to pay attorney's fees to a party defending against a tort claim that arose before the parties executed their agreement.

*Standard of review*

We review the trial court's construction of an unambiguous contract de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–651 (Tex. 1999). If a term is not defined by the parties, we use the term's plain, ordinary, and generally accepted meaning unless the instrument shows that the term has been used in a technical sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

*Analysis*

Cypress compares the prevailing party provision in the purchase agreement to prevailing party provisions in other agreements that provide for the recovery of

attorney's fees in claims "related to" the agreement, which courts have interpreted to permit recovery of attorney's fees in fraudulent inducement claims. *See Robbins v. Capozzi*, 100 S.W.3d 18, 26–27 (Tex. App.—Tyler 2002, no pet.) (holding party entitled to recover attorney's fees for successfully defending fraud and DTPA claims under contract provision for such fees when agreement allowed their recovery by "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract"); *Rich v. Olah*, 274 S.W.3d 878, 888 (Tex. App.—Dallas 2008, no pet.) (holding that fraud and DTPA tort claims related to contract for purpose of provision awarding attorney's fees when contract provided for recovery by "prevailing party in any legal proceeding related to this contract"). Other prevailing party provisions that do not use the "with respect to" or "related" language have been construed more narrowly. *See, e.g.*, *Oat Note, Inc. v. Ampro Equities, Inc.*, 141 S.W.3d 274, 280–81 (Tex. App.—Austin 2004, no pet.) (holding that prevailing party in misrepresentation claim could not recover attorney's fees under provision allowing party to recover attorney's fees if it "prevails in any litigation to enforce this Contract"). The language in this agreement is somewhere between the more broadly worded "related to" or "with respect to" and the more narrow "to enforce".

"Arising from the operation" of an agreement is more limited than "related to" an agreement. "Arising" means to originate or stem from. BLACK'S LAW

16

DICTIONARY 122 (9th ed. 2009). "Operation" refers to the act or process of functioning or performing or "being in or having force or effect." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 869 (11th ed. 2003); BLACK'S LAW DICTIONARY 1201 (9th ed. 2009). Thus, "arising from the operation" of the agreement means originating from the performance of the agreement or the legal effect and obligations imposed by the agreement. *See, e.g.*, *Pagel v. Pumphrey*, 204 S.W.2d 58, 64 (Tex. Civ. App.—San Antonio 1947, writ ref'd n.r.e.) (explaining that operation of agreement is its legal effect and obligations that it imposes on the parties); *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1245 (5th Cir. 1985) (referring to contract's "operation" parties' performance of legal obligations imposed by contract). The language of section 7.3 of the purchase agreement more closely resembles the limited "to enforce" than the expansive "to relate."

The Fazios' claims are based on a failure to disclose information that Cypress promised to disclose before the parties ever entered into the purchase agreement. This is not a dispute about performance under the agreement or a suit for its breach. *See Formosa Plastics*, 960 S.W.2d at 47 ("[A]n independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement."). While a contract undoubtedly can affect the scope of a legal duty to not commit fraud and is essential in determining the measure of damages for fraudulent inducement, the tort itself in this instance does not arise

17

from the contract's operation—it was a pre-contract tort to induce a sale. The parties did not choose to allow for recovery of fees incurred in defending against extra-contractual tort claims by including torts or claims more broadly "relating to" the agreement. We hold that the Fazios' claims against Cypress do not "arise from the operation" of the purchase agreement; hence, the trial court correctly ruled that Cypress is not entitled to attorney's fees for defending against these claims.

**Conclusion**

The trial court properly entered a take-nothing judgment, because the jury found no actual damages under their correct measurement. The trial court properly denied Cypress's request for attorney's fees, because the Fazios' fraud and fraudulent inducement claims arose from conduct that occurred before the purchase agreement's execution, and not from its operation, and the agreement's attorney's fees provision does not encompass torts or extra-contractual claims. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Justice Bland, joined by Chief Justice Radack, and by Justices Massengale, Brown, and Huddle, for the en banc court.

Justice Massengale, concurring.

Justice Keyes, joined by Justices Jennings, Higley, and Sharp, dissenting.

Justice Jennings, joined by Justices Keyes, Higley, and Sharp, dissenting from granting of en banc reconsideration.