**Opinion issued October 6, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00539-CV

————————————

**TAN DUC CONSTRUCTION LIMITED COMPANY, INC. AND HOANG-YEN THI DANG, Appellants**

**V.**

**JIMMY TRAN, Appellee**

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-48243**

---

## MEMORANDUM OPINION

This appeal arises from common-law tort claims adjudicated as part of a divorce proceeding. Appellee Jimmy Tran petitioned for divorce from his wife, appellant Hoang-Yen Thi Dang. Tran also asserted fraud and other tort claims against Dang and Tan Duc Construction Limited Company, Inc. ("Tan Duc"), a

company Tran alleged was controlled by Dang. The trial court entered a judgment based on the jury's findings that Dang committed fraud and awarded Tran damages to compensate him for the loss of his interest in their house in Piney Point, plus exemplary damages.

Dang challenges the trial court's judgment, contending, among other things, that (1) legally insufficient evidence supports the damages award, (2) Tran's damages expert's testimony was unreliable, and (3) the trial court erred by failing to submit a measure of damages. Tan Duc also appealed, arguing that the trial court improperly denied its request for attorney's fees.

Because the jury's award of actual damages was not supported by legally sufficient evidence, we reverse the portion of the judgment awarding actual and exemplary damages to Tran and render judgment that Tran take nothing on his causes of action against Dang. We affirm the remainder of the trial court's judgment.

## Background

Tran and Dang were married in 2007, after they executed a premarital agreement. The agreement provided that all then-existing separate property would remain separate property, and that any assets or liabilities acquired by either party during the marriage would remain separate property. Each party waived any right to support from the other.

In 2010, Tran filed a petition for divorce and asserted claims for breach of the premarital agreement, common-law fraud, breach of fiduciary duty, and civil conspiracy. Tran claimed that Dang breached the agreement by failing to give him a gift of cash, stock, real estate or other assets worth $1 million within 30 days of the consummation of the marriage. Tran also alleged that Dang committed fraud and breached her fiduciary duties to him with respect to several properties that the couple jointly owned during their marriage, including their house located at 11440 Memorial.[1] Tran also sued Tan Duc, contending that it was controlled by Dang and had conspired with Dang to fraudulently transfer property.

Tran's tort claims were tried to a jury. At trial, Tran testified that when he and Dang married, he was the sole owner of the Memorial house. In October 2007, shortly after the marriage, he transferred a 25% interest in the house to Dang and a 25% interest to each of Dang's two daughters. Tran did not allege that these transfers were induced by fraud. Around this same time, Tran mortgaged the house. He executed one promissory note for $2.5 million and another for $500,000. Both notes were personally guaranteed by him alone, and both were secured by the house.

Tran testified that in March of 2010, Dang told him that they should transfer their interests in the house to Tan Duc. According to Tran, Dang told him that the

---

[1] The jury did not find any damages with respect to the commercial properties; accordingly, we focus on the claims and trial evidence pertaining to the couple's house.

transfer would be financially advantageous and that he would still own his 25% interest in the house, either by gaining ownership in the entity that owned the house or by some other means. Tran did transfer his 25% interest to Tan Duc, as Dang suggested, and it is the ultimate loss of this 25% interest that forms the basis of Tran's fraud claim related to the house.

Dang's testimony conflicted with Tran's. Dang testified that in 2010 Tran wanted to transfer his ownership in the house to avoid foreclosure and avoid paying property taxes. According to Dang, Tran wanted Tan Duc to assume responsibility for the house because he could not pay for the notes that burdened it.

Tran, Dang, and Dang's two daughters executed a deed in March 2010 transferring each of their interests—in total, 100% of the interest in the house—to Tan Duc. According to a document executed in connection with the transfer, Tan Duc purchased the house for $5.77 million, $2.77 million of which was the assumption of Tran's liability on the two notes, which had remaining balances of $2.27 million and $500,000. Tran acknowledged at trial that he was personally obligated on those debts and that transferring ownership extinguished his obligations on them. Tan Duc initially made payments on the mortgages, but eventually ceased, causing a foreclosure in October 2011.

Tran's economic damages expert, Dr. Kenneth Lehrer, calculated Tran's damages from the alleged fraud. According to Lehrer, Tran's 25% interest in the

house was worth approximately $800,000 when Lehrer prepared his report in 2013. Lehrer calculated this figure by determining the value of Tran's interest in the property at the time the premarital agreement was executed in 2007 and assuming a 20% increase in value each year. Lehrer testified that this figure would compensate Tran for the loss of the house to foreclosure in 2011. Lehrer testified that he did not account for any debt on the property and that he assumed that Tran had no obligation for any debt on the property at any point.

Lehrer testified that Tran's interest could alternatively be valued by calculating 25% of the $2.62 million foreclosure sales price of the house, which was $655,000, or 25% of HCAD's assessed value of the house at the time of the foreclosure in 2011, which was $625,000. Tran also testified about the value of his interest, calculating that his interest was worth 25% of the 2011 foreclosure price, around $600,000. Importantly, Tran presented no method of calculating damages that took into account the fact that Tran's liability on the house was extinguished upon his transfer.

The jury found that Dang did not breach the premarital agreement or breach a fiduciary duty to Tran, but found that Dang committed fraud against Tran. The jury awarded Tran $650,000 for fraud damages and $50,000 in exemplary damages. The jury found no liability on the part of Tan Duc.

## Dang's Appeal

Dang asserts five issues in her appeal. She argues (1) the trial court erred by admitting unreliable testimony from Tran's damages expert, (2) there is legally insufficient evidence to support the damages award, (3) the trial court erred by failing to submit a measure of damages for the fraud, (4) the jury's fraud and damages findings were rendered immaterial by others, and (5) the award of exemplary damages should be reversed because no evidence supports the actual damages award.

## Sufficiency of the Evidence

In her second issue, Dang contends that legally insufficient evident supports the $650,000 fraud damages award. Because this issue is dispositive, we address it first.

### A. Standard of Review

In conducting a legal sufficiency review, we review the evidence presented below in a light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We set aside the verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827. If more than a

scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005).

The evidence is legally insufficient only if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). The trier of fact may choose to "believe one witness and disbelieve others" and "may resolve inconsistencies in the testimony of any witness." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

## B.    Applicable Law

There are two measures of direct damages in a fraud case: out-of-pocket and benefit-of-the-bargain. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997)). Out-of-pocket damages measure the difference between the value paid and the value received. *Id.*; *see Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984) (out-of-pocket damages allow injured party "to recover the actual injury suffered measured by the difference between the value of that which he parted with, and the value of

that which he has received"). Benefit-of-the-bargain damages measure the difference between the value as represented and the value received. *Formosa Plastics Corp.*, 960 S.W.2d at 49. Both measures are determined at the time of the transfer of the interest induced by the fraud. *Id.*; *Arthur Andersen*, 945 S.W.2d at 817; *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 395 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Furthermore, losses beyond the difference between the amount the plaintiff gave and the value he received can be recovered only as consequential damages, which must be explicitly premised on findings that the losses were foreseeable and directly traceable to the misrepresentation. *See Arthur Andersen*, 945 S.W.2d at 817; *Fazio*, 403 S.W.3d at 395.

In the absence of an objection to the court's charge, we evaluate the sufficiency of the evidence in light of the court's charge as given to the jury. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Where a party does not complain that the charge's measure of damages was improper or provide a proper measure of damages, an appellate court measures the sufficiency of the evidence for damages based on the language in the jury charge that was given. *See Faucette v. Chantos*, 322 S.W.3d 901, 912 (Tex. App.—Houston 14th Dist. 2010, no pet.).

## C.    The Charge and Charge Conference

Tran's fraud theory at trial was that Dang fraudulently induced him to transfer his 25% interest in the house to Tan Duc in 2010.  Question 13, the damages question, asked the jury:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jimmy Tran for his damages, if any, that resulted from the conduct of Hoang-Yen Thi Dang?
>
> If you answered "No" to Question 7, related to fiduciary duty, you must further find that any resultant damages were "proximately caused" by Hoang[-]Yen Thi Dang.
>
> "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of any event.
>
> Consider the following elements of damages, if any, and none other.
>
> Do not add any amount for interest on damages, if any.
>
> Answer separately in dollars and cents for damages, if any, related to each of the following at the time of the failure to comply or fraud:
>
> 1.    11440 Memorial            Answer $ 650,000
>
> 2.    Venus Plaza. LP           Answer $ 0
>
> 3.    Venus Park Subdivision    Answer $ 0
>
> 4.    Furniture and Fixtures    Answer $ 0
>
> 5.    Gift (Question 4)         Answer $ 0

9

Question 13 was predicated on the jury's affirmative answer to any one of three liability questions: failure to comply with the premarital agreement, breach of fiduciary duty, or fraud. The jury answered "no" to the failure to comply and breach of fiduciary duty questions, so the damages award can be affirmed only if there is sufficient evidence of fraud damages.

Although Tran's theory of the case was that Dang defrauded him in 2010 when she persuaded him to transfer his 25% interest in the house to Tan Duc, her proposed instruction at the charge conference focused on the house's value in 2011. Dang requested that the jury be instructed that the proper measure of fraud damages was "the difference between the value of the property in question at the date of foreclosure [in 2011] and the remaining balance due on the indebtedness [in 2011]." The trial court thus correctly denied this request. *See Formosa Plastics Corp.*, 960 S.W.2d at 49 (out-of-pocket damages measure difference between value paid and received and benefit of bargain damages measure difference between value represented and received; both are determined at time of transfer of interest induced by fraud); *Arthur Andersen*, 945 S.W.2d at 817 (same); *Fazio*, 403 S.W.3d at 395 (same).

Dang did not otherwise object to the damages question in the charge. Accordingly, we will measure the sufficiency of the evidence of fraud damages based on the language in the jury charge that was given. *See Faucette*, 322 S.W.3d

10

at 912 (where party fails to provide proper measure of damages, appellate court measures sufficiency based on language in jury charge as given).

**D.    Analysis**

With respect to fraud damages, Question 13 told the jury to assess fraud damages "at the time of the . . . fraud." The jury was instructed that:

Fraud occurs when—

1.    A party makes a material misrepresentation, and

2.    The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3.    The misrepresentation is made with the intention that it should be acted on by the other party, and

4.    The other party relies on the misrepresentation and thereby suffers injury.

Thus, the jury was instructed to measure fraud damages at the time that Tran acted on Dang's alleged misrepresentation—which, according to Tran, was when he transferred his 25% interest to Tan Duc in 2010. *See Arthur Andersen*, 945 S.W.2d at 817 (fraud damages are measured at time of sale induced by fraud); *Fazio*, 403 S.W.3d at 395 (fraud, and fraud damages, occur at time plaintiff transfers his interest due to fraud, and "not at some future time").

At trial, Tran acknowledged that at the time he transferred his 25% interest in 2010, he was personally and solely liable on two promissory notes secured by the house with balances of $2.27 million and $500,000. Tran also acknowledged, and

11

the agreement executed in connection with the transfer shows, that Tan Duc assumed Tran's $2.77 million liability on those notes as part of the consideration for the transfer of the house to Tan Duc. Thus, the evidence conclusively showed that Tran received at least $2.77 million in value in exchange for his 25% interest in the house. In order to demonstrate that he was damaged by the alleged fraud, Tran therefore was required to adduce evidence that the value of his 25% interest at the time of the transfer exceeded the value he received in exchange for his interest—$2.77 million. *See Formosa Plastics Corp.*, 960 S.W.2d at 49; *Arthur Andersen*, 945 S.W.2d at 817; *Fazio*, 403 S.W.3d at 395. In other words, to show direct damages for fraud, Tran had to adduce evidence that his 25% interest was worth more than $2.77 million in 2010, or that the house was worth more than $11.08 million at that time.

Tran put on no such evidence. Neither Tran nor Lehrer testified about the value of the house in 2010. The only record evidence Tran identifies on appeal pertaining to the value of the house in 2010 is the agreement executed in connection with the transfer by him to Tan Duc. It states that Tan Duc paid $5.77 million for the property. While this is some evidence that the house was worth $5.77 million in 2010, it falls far short of the amount Tran needed to prove to show that the value of what he gave exceeded the value of what he received or that the value of what he received was less than what was represented. In other words, because 25% of $5.77 million, or $1,442,500, does not exceed the $2.77 million Tran received in exchange

12

for his interest, the only evidence of the house's value in 2010 demonstrates conclusively that Tran suffered no direct damages.

Tran argues that the damages award is supported by evidence of the house's value at other points in time, including when the parties first married in 2007, when the house was foreclosed in 2011, and when Lehrer prepared his expert report in 2013. But according to Tran's appellate brief, the highest value of the house supported by this record evidence is $5.8 million. Ant. Br. 25. Thus, while there is some evidence in the record of the house's value, there is no evidence in the record that 25% of the house's value ever exceeded the amount Tran received in exchange for his 25% interest—$2.77 million.

Viewing the evidence in a light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, there is no legally sufficient evidence that 25% of the house's value ever exceeded $2.77 million, the amount Tran received in exchange for his 25% interest. *See City of Keller*, 168 S.W.3d at 810. Accordingly, we hold that the evidence is legally insufficient to support the $650,000 fraud damages award. *See id.* at 827; *see, e.g.*, *Fazio*, 403 S.W.3d at 395–96 (legally insufficient evidence supported damages award based upon evidence of property value three years after fraud, and trial court properly disregarded jury's finding and awarded $0 in fraud damages). Because there is no evidence that Tran was damaged

when he transferred his 25% interest in the house in exchange for the assumption of $2.77 million debt and other consideration, we will render judgment that Tran take nothing by his fraud claim. *See Guevara v. Ferrer*, 247 S.W.3d 662, 669–70 (Tex. 2007).

We sustain Dang's second issue.

## Exemplary Damages

In her fifth issue, Dang argues that the award of $50,000 in exemplary damages to Tran must be reversed because the underlying actual damages award is supported by legally insufficient evidence. Exemplary damages may not be awarded without an award of actual tort damages. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995). Because we hold that legally insufficient evidence supports the award of actual damages, we must also reverse the award of exemplary damages. *See id.*; *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 75 (Tex. App.—San Antonio 2007, pet. denied) (reversing award of exemplary damages because insufficient evidence supported award of actual damages).

We sustain Dang's fifth issue.

Because we have concluded that the awards of actual and exemplary damages must be reversed and a take-nothing judgment rendered, we do not reach Dang's first, third, and fourth issues, which would afford her no greater relief.[2]

**Tan Duc's Appeal**

In four issues, Tan Duc argues that the trial court erred by denying it attorney's fees. Tan Duc contends that it timely counterclaimed for attorney's fees and costs and timely submitted a motion requesting fees to the trial court. Although the record contains a petition with a counterclaim for fees, Tan Duc does not identify any motion for fees in the appellate record, and we have found none. Because the record does not reflect that Tan Duc asked the trial court to award attorney's fees on any of the bases raised in its brief on appeal, we hold that it has waived its appellate arguments regarding fees. *See* TEX. R. APP. P. 33.1 (to preserve complaint for appellate review, record must show that party made request to trial court and that trial court ruled on request); *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 550 (Tex. 2004) (party bears burden to request items in clerk's record not included pursuant to Texas Rule of Appellate Procedure 34.5); *Christiansen v.*

---

[2] In her first issue, Dang contends that the trial court erred by admitting Tran's damages expert's testimony. In her third issue, Dang contends that the trial court erred by failing to submit a measure of damages. In her fourth issue, Dang argues that the jury's findings regarding fraud and fraud damages were rendered immaterial by the jury's negative response to a question regarding the basis for Tran's decision to deed his interest in the house to Tan Duc.

15

*Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (burden is on appellant to present sufficient record to show error requiring reversal).

## Conclusion

We reverse the portion of the judgment awarding $650,000 in actual damages and $50,000 in exemplary damages to Tran and render judgment that Tran take nothing on his causes of action against Dang. We affirm the remainder of the trial court's judgment. The clerk of the trial court shall release Dang from further liability on the supersedeas bond she filed in the case.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.