**REVERSE and RENDER; and Opinion Filed October 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01224-CV

### ADT SECURITY SERVICES, INC., Appellant and Cross-Appellee
### V.
### VAN PETERSON FINE JEWELERS, Appellee and Cross-Appellant

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-12111**

## MEMORANDUM OPINION
Before Justices Fillmore, Brown, and O'Neill[1]
Opinion by Justice O'Neill

Van Peterson Fine Jewelers (Van Peterson) sued ADT Security Services, Inc. (ADT) for

damages it sustained in a burglary on its premises in September 2007. A burglar alarm provided

by ADT failed to operate on the night of the burglary. A jury answered some, but not all,

questions in Van Peterson's favor, and the trial court rendered judgment for Van Peterson. We

reverse the trial court's judgment because the evidence is legally insufficient to support it. We

render judgment that Van Peterson take nothing on its claims against ADT.

### BACKGROUND

Van Peterson operated a retail jewelry store in Irving, Texas. In 1999, Van Peterson and

ADT entered into a contract under which ADT agreed to provide commercial alarm services to

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

Van Peterson. On the night of September 12, 2007, there was a burglary at the store. The burglars stole at least $1,000,000 worth of jewelry.

The parties agree on some of the relevant facts. The date and terms of the parties' contract are not disputed. The parties agree that the contract required ADT to obtain and periodically renew a certificate from Underwriters Laboratory (UL) to ensure that the alarm system met UL's standards. It is undisputed that Van Peterson's UL certificate was renewed in April 2006 in accordance with the parties' contract and was in effect at the time of the burglary. It is also undisputed that the alarm worked properly from its installation in 1999 until late May, 2007. The parties stipulated that the burglary was the work of "the O'Brien gang," a group that successfully burglarized jewelry stores throughout Texas. It is undisputed that the alarm system provided by ADT did not operate on the night of the burglary.

But the parties disagree on the reason why the alarm did not operate. Van Peterson alleges that a few months before the burglary, an ADT employee came to the store and worked on the alarm system for most of a day. Van Peterson contends that the employee represented that he would replace the two-way radio, an integral part of the alarm system, with a "cellular back-up" that would be an improvement over the radio back-up. The employee began work, possibly disconnecting the radio back-up, but never returned to complete installation of the cellular back-up. According to Kurt Peterson, Van Peterson's owner, the ADT employee also represented that the cellular back-up met the standards for the contractually-required UL certificate. Van Peterson contends these representations were false, constituted deceptive trade practices, and breached warranties, all in violation of the deceptive trade practices act ("DTPA").[2]

ADT denies the "cellular back-up" theory in its entirety. ADT denies (1) that its employee came to the store or performed any work on the system as Van Peterson alleged;

---

[2] *See* TEX. BUS. & COM. CODE ANN. § 17.41–17.63 (West 2011 & Supp. 2016).

(2) that it replaced the UL-compliant two-way radio back-up with a cellular back-up, so that the system was no longer in compliance with UL standards; or (3) that it made any representations to Van Peterson other than those made in the contract itself.

Van Peterson's expert witness Thomas Prevas testified that on the date of the burglary, Van Peterson's alarm system did not meet UL certification standards. He explained that the system was not only "in violation of the certification standards," but also "would be considered by UL to be a severe violation." He testified that a critical component of Van Peterson's alarm system, the "line security" provided by the two-way radio, was not operational. Prevas originally opined that the ADT employee who attempted to install the cellular back-up put the system on extended "test," so that the line security did not operate properly on the night of the burglary. But at trial Prevas conceded that that this explanation was incorrect, based on the evidence ADT offered at trial. Prevas also conceded that in the wreckage left by the burglars, there was no evidence of cellular back-up; only a two-way radio was found. Therefore, neither Van Peterson nor ADT offered a definitive explanation of the cause of the alarm's failure.

Van Peterson originally asserted claims against ADT for negligence, gross negligence, breach of contract, negligent misrepresentation, civil conspiracy, fraud, and violations of the DTPA. In a previous interlocutory appeal, however, we rendered judgment for ADT on Van Peterson's negligence, gross negligence, breach of contract, and negligent misrepresentation claims, concluding that a limitation of liability clause in the parties' contract barred those claims:

> Because Van Peterson contractually agreed to seek recovery from its insurer, and only its insurer, in the event of a loss due to breach of contract or negligence, and because Van Peterson now seeks to recover those damages from ADT, the trial court erred by denying ADT's traditional motion for summary judgment on Van Peterson's claims for negligence, gross negligence, breach of contract, and negligent misrepresentation.

*ADT Sec. Servs., Inc. v. Van Peterson Fine Jewelers*, 390 S.W.3d 603, 607 (Tex. App.—Dallas 2012, no pet.). Our opinion did not address Van Peterson's claims for civil conspiracy, fraud, or violations of the DTPA. *Id.* at 608 n.1.

On remand, the case proceeded to a jury trial on Van Peterson's DTPA claims. The jury rejected Van Peterson's cellular back-up theory, answering "no" to the corresponding questions.[3] But the jury found both a "false, misleading, or deceptive act or practice" and a failure to comply with a warranty "that the alarm system functioned in compliance with all applicable UL standards." Specifically, Question No. 1 of the jury charge asked, "Did ADT engage in any false, misleading or deceptive act or practice that Van Peterson relied on to its detriment and that was a producing cause of damages to Van Peterson?" Instructions regarding "producing cause" and "false, misleading or deceptive act or practice" followed. Question No. 1 continued:

> Answer "yes" or "no" for each of the following:
>
> 1)   that a cellular back-up would be an improvement over the radio back-up;
>
>      ANSWER:   NO
>
> 2)   that a cellular back-up met UL certificate standards;
>
>      ANSWER:   NO
>
> 3)   that the alarm system functioned in compliance with all applicable UL standards.
>
>      ANSWER:   YES

Question No. 2 of the jury charge inquired, "Was the failure, if any, of ADT to comply with a warranty a producing cause of damages to Van Peterson?" Instructions regarding "producing cause" and "failure to comply with a warranty" followed. Question No. 2 continued:

---

[3] A plurality of the jury did find, in response to Question Nos. 5 and 6 of the charge, that "the person identified by Plaintiff as entering its premises in late Spring or early Summer" was acting as an employee of ADT "in the scope of his employment and within the scope of the general authority given him" by ADT. But neither party seeks any relief in this appeal arising from the jury's answers to these questions.

Answer "yes" or "no" for each of the following:

1) that a cellular back-up would be an improvement over the radio back-up;

ANSWER:  NO

2) that a cellular back-up met UL certificate standards;

ANSWER:  NO

3) that the alarm system functioned in compliance with all applicable UL standards.

ANSWER:  YES

The jury also made findings of Van Peterson's damages "that resulted from ADT's actions" of $1,110,300.  The trial court rendered judgment for Van Peterson on the jury's verdict. This appeal followed.[4]  In six issues,  ADT contends (1) the trial court erred by submitting a new, undisclosed DTPA theory in the  jury instructions; (2) the DTPA claim on which judgment was rendered is legally deficient; (3) the jury instructions were improper; (4) the trial court erred by submitting an issue on breach of warranty because the parties' contract disclaimed all warranties; (5) there was no evidence of causation; and (6) the trial court erred by failing to remit the jury's award of damages.  In a cross-appeal, Van Peterson contends the trial court erred by failing to grant a directed verdict "for the amount of damages conclusively proven by Van Peterson."

## APPLICABLE LAW AND STANDARD OF REVIEW

Nonperformance of a contract is not actionable under the DTPA.  *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996) (per curiam).  "An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."  *Id.* at 14 (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661

---

[4] The trial court initially denied the parties' post-verdict motions, *sua sponte* granted a new trial, and signed an order permitting an interlocutory appeal.  We dismissed the appeal, however, for want of jurisdiction. *See ADT Sec. Servs., Inc. v. Van Peterson Fine Jewelers*, No. 05-15-00646-CV, 2015 WL 9753589 (Tex. App.—Dallas Jul. 29, 2015, no pet.) (mem. op.).  The trial court then rendered judgment on the jury's verdict.

S.W.2d 933, 935 (Tex. 1983)). In *Crawford*, the defendants failed to publish a yellow pages advertisement in breach of their written contract with the plaintiffs. *Id.* at 13. Crawford, a sales representative for Yellow Pages, represented to the plaintiffs that the ad would be published and that it would increase the plaintiffs' business, among other promises. *Id.* at 14. The court concluded:

> Crawford's statements were nothing more than representations that the defendants would fulfill their contractual duty to publish, and the breach of that duty sounds only in contract. The *statements* themselves did not cause any harm. The failure to run the advertisement (the breach of the contract) actually caused the lost profits, and that injury is governed by contract law, not the DTPA.

*Id.* at 14–15.

In *Wright v. CAE SimuFlite, Inc.*, No. 05-07-00759-CV, 2008 WL 2841165, at *2 (Tex. App.—Dallas Jul. 24, 2008, no pet.) (mem. op.), we explained:

> In determining whether an allegation is really only a contract claim or also a tort claim, we analyze both the source of the duty and the nature of the loss. *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex. 1991). If a defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may be a contract claim as well as a tort claim. *Id.* at 494. But if the defendant's conduct would give rise to liability only because it breaches the contract, the plaintiff's claim generally is only a contract claim. *Id.*

Because Wright's claim was "really that the service he was promised and paid for was not the service he received," it could "only be characterized as a breach of contract claim." *Id.* We concluded that the trial court did not err by granting summary judgment on Wright's DTPA claim. *See id.*

The general rule is that the provisions of the DTPA cannot be waived or disclaimed. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 812 (Tex. App.—Dallas 1999, no pet.) (citing TEX. BUS. & COM. CODE ANN. § 17.42). Thus, a contractual limitation of liability clause is invalid insofar as it purports to waive liability for an act defined as "deceptive" in section 17.46 of the DTPA, which includes material misrepresentations. *Id.* at 811. An

exception to this "no-waiver" provision exists when a DTPA cause of action is predicated on breach of an express or implied warranty. *Id.* at 812.[5] If a DTPA claim has as its basis breach of an express warranty, then a contractual clause limiting liability is enforceable because the warranty becomes part of the basis of the bargain between the parties. *Id.* (citing *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex. 1991)). For implied warranties derived from common law or statutory sources, we look to the source of the warranty to determine its nature and extent. *Id.* An implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner may not be waived or disclaimed. *Id.* at 812–13 (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987)). But "Texas does not recognize an implied warranty to 'install and/or maintain' an alarm system in a good and workmanlike manner as such." *Id.* at 813. "The supreme court has recognized the implied warranty only when the service performed relates to the repair or modification of existing tangible goods or property." *Id.*

ADT contends the trial court erred by denying its motion to disregard the jury's answers to subpart 3 of Question Nos. 1 and 2. A trial court should disregard a jury finding that is in response to a legally defective question. *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 725 (Tex. App.—Dallas 2014, no pet.) (quoting *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394 (Tex. App.—Houston [1st Dist.], pet. denied) (en banc)). A trial court should also disregard a jury finding if the evidence is legally insufficient to support it, or if a directed verdict would have been proper because a legal principle precludes recovery. *Id.* (quoting *Fazio*, 403 S.W.3d at 394). We review the trial court's ruling under a legal sufficiency standard. *Id.*; *see also City of*

---

[5] *See also Materials Mktg. Corp. v. Spencer*, 40 S.W.3d 172, 174–75 (Tex. App.—Texarkana 2001, no pet.):

> Under the DTPA, no waiver is allowed for a "laundry list" violation protecting consumers' statutory rights. TEX. BUS. & COM. CODE ANN. § 17.42 (Vernon Supp. 2001). However, an action for breach of warranty is not a creation of the DTPA. *Southwestern Bell* [*Tel. Co. v. FDP Corp.*]*,* 811 S.W.2d [572] at 576 [Tex. 1991)]. Breach of warranty claims derive from common-law principles or non-DTPA statutes, so these sources would have to be consulted in determining the validity of the disclaimer. *Id.* at 576–77.

*Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (discussing standard of review for challenges to legal sufficiency of evidence). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

**DISCUSSION**

### 1.      Misrepresentation

By its "yes" answer to part 3 of Question No. 1, the jury found that ADT represented "that the alarm system functioned in compliance with all applicable UL standards," and that this representation was a "false, misleading or deceptive act or practice" relied on by Van Peterson that was a producing cause of damages. UL certification, however, was specifically addressed in the parties' contract.

In the parties' 1991 contract, ADT agreed to provide a UL certification to Van Peterson. In a list of "Services to be Provided," the contract listed "Other  UL CERT.  " followed by a circled "P" for "Provided." The list of equipment and services to be furnished by ADT included "RE-ISSUE A UL CERTIFICATE," as well as specifying "1 ALARMNET 2-WAY UL RADIO" in the equipment to be installed. ADT's trial exhibits included a "Police Station Connected Mercantile Burglar Alarm Certificate" issued by Underwriters Laboratories, Inc. in 1989 with a renewal covering the period April 12, 2006 through April 12, 2011. ADT was listed as the alarm service company on the 2006–2011 renewal. The undisputed evidence showed that ADT corrected problems identified by UL in order to obtain the 2006 renewal certificate, and that ADT conducted an annual inspection for UL compliance in the spring of 2007.

Van Peterson relies on three sources for the representation that "the alarm system functioned in compliance with all applicable UL standards": (1) the unidentified ADT workman who represented that cellular back-up would meet UL certificate standards; (2) the UL certificate

–8–

itself; and (3) the "chirping" or "beeping" of the alarm system each day when Kurt Peterson used the keypad to activate or de-activate the alarm.[6] The jury expressly rejected the first source by its "no" answer to subpart 2 of Question 1 ("that a cellular back-up met UL standards"). The second source arose from the contract itself and is not actionable as a DTPA violation. *See Crawford*, 917 S.W.2d at 14–15. As to the third source, Van Peterson argues that the alarm system's daily chirps served as representations that the alarm was functioning properly and in accordance with UL standards. Van Peterson cites no authority for the proposition that an actionable DTPA representation may be made by an inanimate object, and we decline to so hold. We conclude there was no evidence that ADT made a misrepresentation actionable under the DTPA.

### 2. Warranty

The jury found that ADT breached a warranty "that the alarm functioned in compliance with all applicable UL standards." Under the wording of Question No. 2, the jury could have found that this warranty was either express or implied. Question No. 2 defined "failure to comply with a warranty" as "any of the following: 1. Failing to comply with an express warranty . . . . 2. Failing to comply with an implied warranty . . . . or 3. Failing to perform services in a good and workmanlike manner . . . ."

Any express warranty that the alarm functioned in compliance with all applicable UL standards, however, arose from the parties' contract. As we have discussed, the parties' contract expressly called for UL certification and renewals. Van Peterson's claim is that the product or service it was promised and paid for—a UL-compliant alarm system—was not the product or service it received. *See Wright*, 2008 WL 2841165, at *2. This is a claim that ADT breached the

---

[6] Prevas testified, "There is a certificate in force. It's also a part of the contract and, therefore, in my opinion, every night when Kurt went to his keypad and turned on his alarm system, he had an expectation that he had a full UL certified system with line security." And an ADT technician testified, in questioning by Van Peterson, "Q. And every day when you arm your alarm and it gives you that successful chirp for armed message, that's restating that this alarm is a proper UL certified alarm system by ADT? A. Yes."

contract, not a claim for violation of the DTPA. *See id.* In our previous opinion we concluded that the limitation of liability provision in the parties' contract waived Van Peterson's claim for breach of contract arising from the failure of the alarm system on the night of the burglary. *See ADT Sec. Servs., Inc.*, 390 S.W.3d at 607. If a DTPA claim has as its basis breach of an express warranty, a limitation of liability clause is enforceable because the warranty becomes part of the basis of the bargain between the parties. *Arthur's Garage, Inc.*, 997 S.W.2d at 812 (citing *Sw. Bell Tel. Co.*, 811 S.W.2d at 577). The only other express warranty alleged by Van Peterson relating to applicable UL standards was "that a cellular back-up met UL certificate standards." This allegation was rejected by the jury by its "no" answer to subpart 2 of Question No. 2. The trial court's judgment in favor of Van Peterson cannot be supported by a jury finding of breach of an express warranty in response to Question No. 2.

Next we consider whether the trial court's judgment can be supported by a jury finding of breach of an implied warranty, including an implied warranty to perform services in a good and workmanlike manner. We recognized in *Arthur's Garage, Inc.* that "the supreme court has expressly held that the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner may not be waived or disclaimed." *Arthur's Garage, Inc.*, 997 S.W.3d at 812–13 (citing *Melody Home Mfg. Co.*, 741 S.W.2d at 355). But we also explained that "Texas law does not recognize an implied warranty to 'install and/or maintain' an alarm system in a good and workmanlike manner as such." *Id.* at 813. The warranty extends only to "the repair or modification of existing tangible goods or property." *Id.* at 813.

Here, the jury rejected Van Peterson's claims of a warranty arising from the repair or modification of the alarm system by its "no" answers to subparts 1 and 2 of Question No. 2. The jury's only finding was a failure to comply with a warranty "that the alarm system functioned in compliance with all applicable UL standards." We have concluded that this warranty was

express, not implied. The trial court's judgment cannot be supported by the jury's finding in response to subpart 3 of Question No. 2.

### 3. Conclusion

Van Peterson's DTPA claims arose from its complaint that ADT did not provide a UL-compliant alarm system as it contractually promised to do. Nonperformance of a contract is not actionable under the DTPA. *See Crawford*, 917 S.W.2d at 14–15. The record does not support a finding of breach of any implied warranty. *See Arthur's Garage, Inc.*, 997 S.W.2d at 812–13. We previously held that summary judgment was proper on Van Peterson's claims for breach of contract, which would include any claims for breach of an express warranty. *See ADT Sec. Servs., Inc.*, 390 S.W.3d at 607. For these reasons, the evidence is legally insufficient to support the trial court's judgment, and we sustain ADT's second and fourth issues.

Because of our disposition of these issues, we need not further consider ADT's remaining issues or Van Peterson's cross-issue. We reverse the trial court's judgment and render judgment that Van Peterson take nothing on its claims. *See* TEX. R. APP. P. 43.3 (when reversing trial court's judgment, court of appeals must render judgment trial court should have rendered); *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 813 (Tex. App.—Dallas 2007, no pet.) ("When we uphold a no evidence issue, we render the judgment the trial court should have rendered.").


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED


151224F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ADT SECURITY SERVICES, INC.,
Appellant and Cross-Appellee

No. 05-15-01224-CV          V.

VAN PETERSON FINE JEWELERS,
Appellee and Cross-Appellant

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-12111.
Opinion delivered by Justice O'Neill;
Justices Fillmore and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellee and cross-appellant Van Peterson Fine Jewelers take nothing on its claims.

It is **ORDERED** that appellant and cross-appellee ADT Security Services, Inc. recover its costs of this appeal from appellee and cross-appellant Van Peterson Fine Jewelers.

Judgment entered this 13th day of October, 2016.