

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00071-CV

_____

AUTONATION FORT WORTH MOTORS, LTD. D/B/A BANKSTON
CHEVROLET FORT WORTH, Appellant

V.

LINDA M. MITCHELL, Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-223864-07

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In five issues, Appellant AutoNation Fort Worth Motors, Ltd. d/b/a Bankston Chevrolet Fort Worth (AutoNation) attacks the trial court's judgment awarding damages under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) to Appellee Linda M. Mitchell.  The timeline of the matter is unusual to say the least:  the jury's verdict occurred in 2009, and the judgment was signed in 2024.  AutoNation waited this fifteen-year period to request the preparation of the reporter's record.  The court reporter had destroyed her notes between the time of the trial and AutoNation's request.  In its first issue, AutoNation argues that the trial court should have granted a new trial because AutoNation was without fault when it failed to send the court reporter notice to preserve her notes within the time required by the Texas Government Code.  Specifically, AutoNation claims that it was absolved of fault because a statutory stay and a trial-court stay order rendered as a result of a co-defendant's bankruptcy tied its hands in requesting the record.  We disagree.  We cannot review AutoNation's second, third, and fourth issues because, in the absence of a reporter's record, we lack a sufficient record to do so.  We reject AutoNation's fifth issue that requests that we remand this matter for a new trial in the interest of justice under Texas Rule of Appellate Procedure 43.3; a precondition of a remand under that rule is our conclusion that reversible error has occurred, and we conclude that no error has occurred.  Accordingly, we affirm the trial court's judgment.

2

## II. Factual and Procedural Background

The parties' controversy spans twenty years. In 2005, Mitchell purchased a Chevrolet Kodiak from AutoNation. Mitchell contended that the vehicle had so many defects that it was a lemon and instituted an administrative proceeding that resulted in an order that General Motors Corporation repurchase the vehicle. In 2007, Mitchell filed suit against General Motors and AutoNation alleging various claims under the DTPA.

In response to its joinder in Mitchell's suit, AutoNation filed a cross-claim against General Motors seeking contractual and statutory indemnity. AutoNation sought summary judgment on its cross-claim, and the trial court issued a letter ruling stating that the motion was granted "regarding the claim for contractual and statutory indemnification."

Mitchell's DTPA claims against General Motors and AutoNation proceeded through the litigation process and were eventually tried to a jury in 2009. A nonunanimous jury verdict generally found in favor of Mitchell's claims and awarded her various measures of damage.

Mitchell filed a motion to enter judgment, and at this point, the litigation took a turn that placed it in limbo for more than a decade. Shortly after the verdict, General Motors filed for bankruptcy. AutoNation filed a suggestion of General Motors's bankruptcy in the trial court and asserted that the Bankruptcy Code's automatic-stay provision prevented entry of a judgment that implemented the jury's verdict. In

3

response to the bankruptcy filing, the trial court signed a stay order that closed "this file and remove[d] it from the active docket of pending cases subject to further order of this court." The order specified that the case was not dismissed and that the trial court retained jurisdiction over it.

Thus, the case languished with Mitchell's making periodic and unsuccessful efforts to move it forward. In 2012, Mitchell filed a pro se motion for relief from the automatic stay; the trial court denied her motion. Ten years later, in 2022, Mitchell filed another pro se motion for relief from the automatic stay. Mitchell attached to this motion as an exhibit a 2012 order signed by the bankruptcy court lifting the automatic stay's effect on Mitchell's claims against AutoNation. Who was given notice of the motion seeking the order, who was given notice of its entry, and why it was not brought to the trial court's attention for ten years is not explained by the motion. Mitchell also filed a pro se motion seeking to implement the jury's verdict by requesting that judgment be entered against AutoNation. AutoNation objected to both motions. The trial court denied Mitchell's motion for judgment "without prejudice." A second order denied the motion for relief from the automatic stay but also provided "that this case be restored to the [c]ourt's active docket for further proceeding, as necessary."

Two years after these orders, in 2024, Mitchell—now represented by counsel—filed a motion for judgment on the verdict that sought to implement the jury's now fifteen-year-old verdict. This motion noted that General Motors's bankruptcy had at

long last been closed. Again, AutoNation objected to entry of judgment. The objection contended that the judgment that Mitchell had proposed was not supported by the verdict and that severing the claims that Mitchell had made against AutoNation was impermissible. The trial court signed a judgment granting Mitchell a damage recovery.

Now, fifteen years after the verdict, AutoNation requested preparation of a "full reporter's record" of the 2009 trial.[1] The official reporter who had transcribed the trial responded to the request by noting that the Texas Government Code requires preservation of the reporter's notes for only "three years from the date on which they were taken." The letter also stated that the reporter's notes had been destroyed:

> I retired from the 348th District Court in January 2022. If the notes or information from which to create the reporter's record in the above trial were not destroyed beforehand, they were destroyed in preparation for my retirement. Therefore, I am unable to prepare the reporter's record you have requested.

AutoNation used the revelation that the record was destroyed to support its motion for new trial that it had filed in response to the entry of judgment. The motion for new trial contended that the judgment contained legal errors, that it improperly severed claims made against AutoNation, and that "[t]he missing reporter's record builds in reversible error to the [j]udgment." To explain why it had

---

[1] The letter requesting the record is dated in 2024. In its reply brief, AutoNation contends that an affidavit from its attorney shows a request was also made in 2022. Our holdings below make this discrepancy a nonissue. Whether the request was made in 2022 or 2024, it came too late.

failed to request preservation of the reporter's notes from the 2009 trial, AutoNation contended primarily that notifying the reporter to preserve her notes would have been a continuation of litigation of its cross-claim against General Motors and would have placed it in violation of the automatic stay created by the filing of General Motors's bankruptcy. AutoNation also argued that the trial court had stayed the litigation because of the bankruptcy. Further, it argued that even if its belief—that the automatic stay prohibited notifying the court reporter—was wrong, its fear that the notification might violate the automatic stay created a reasonable concern that negated a finding of fault in its failure to make the request. Mitchell responded to the motion for new trial, and the trial court conducted a hearing on it. The trial court signed an order denying the motion. AutoNation then filed a notice of appeal.

### III. Analysis

**A.     We reject AutoNation's first issue claiming that it was without fault in its inability to obtain a reporter's record.**

In its first issue, AutoNation argues that the trial court erred by failing to grant it a new trial because the court reporter's notes, which were necessary to prepare a reporter's record, had been destroyed. The trial court impliedly found that AutoNation was at fault for the destruction of the notes because AutoNation had not timely requested their preservation. We hold that the excuses that AutoNation offers to establish that it was without fault fail as a matter of law. AutoNation marshals a number of excuses for why it waited fifteen years to request preparation of a

6

reporter's record: (1) the bankruptcy stay excused its inaction; (2) the trial-court stay excused its inaction; and (3) even if neither stay excused its inaction, Texas caselaw made its lassitude in seeking to obtain a reporter's record reasonable. We serially address and reject each of these arguments.

### 1. We set forth the interplay between the Texas Rules of Appellate Procedure's and the Government Code's requirements regarding the preservation of a reporter's notes.

The Texas Rules of Appellate Procedure authorize a new trial when the reporter's record has been destroyed. Texas Rule of Appellate Procedure Rule 34.6(f) governs the determination of whether a new trial should be granted and imposes four conditions on granting a new trial when the reporter's record has been lost or destroyed:

*Reporter's Record Lost or Destroyed.* An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed[,] or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of

7

the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

Tex. R. App. P. 34.6(f).[2]

Rule 34.6(f) interplays with the Government Code section that allows the destruction of the notes underlying the reporter's record after a three-year period by providing that "[o]n request, an official court reporter shall . . . preserve the notes [of oral testimony] for future reference for three years from the date on which they were taken." Tex. Gov't Code Ann. § 52.046(a)(4).

The base question before us is whether the failure to request that a reporter preserve notes creates fault on the part of an appellant that forestalls the right to a new trial. As noted, Rule 34.6(f)(2) imposes a lack of fault as one of the preconditions to the grant of a new trial—"if, *without the appellant's fault*, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed." Tex. R. App. P. 34.6(f)(2) (emphasis added).

---

[2]"Generally, we review a trial court's Rule 34.6(f) findings for an abuse of discretion." *In re A.B.*, No. 02-24-00264-CV, 2025 WL 1668332, at *2 n.6 (Tex. App.—Fort Worth June 12, 2025, no pet.) (mem. op.) (first citing *In re A.C.J.*, No. 05-21-00977-CV, 2022 WL 1222677, at *2 (Tex. App.—Dallas Apr. 26, 2022, no pet.) (mem. op.); then citing *In re J.T.*, No. 02-20-00056-CV, 2020 WL 2073749, at *2 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.)). "A trial court . . . abuses its discretion if it fails to analyze or apply the law correctly." *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Here, the facts appear to be undisputed. "[W]hen . . . the relevant facts are not disputed, the issue on appeal becomes the proper construction of specific statutory provisions and application of those provisions to the undisputed facts of the case." *LJA Eng'g Inc. v. Santos*, 652 S.W.3d 916, 919 (Tex. App.—Houston [14th Dist.] 2022, no pet.). In that circumstance, our standard of review is de novo. *Id.*

As a general proposition, the Texas Supreme Court has held that the failure to request preservation of the reporter's notes under Section 52.046 is "fault." In 1993, the supreme court addressed this question in the context of a prior version of the Rules of Appellate Procedure. *See Piotrowski v. Minns*, 873 S.W.2d 368 (Tex. 1993). *Piotrowski* analyzed former Rule of Appellate Procedure 50(e), which provided that "[i]f the appellant has made a *timely request* for a statement of facts, but the court reporter's notes and records have been lost or destroyed *without appellant's fault*, the appellant is entitled to a new trial unless the parties agree on a statement of facts." *Id.* at 370.

The supreme court held that the duty to preserve the record lay unquestionably at the feet of the aggrieved party that wished to appeal:

> At every stage of the proceedings in the trial court, litigants must exercise some diligence to ensure that a record of any error will be available in the event that an appeal will be necessary. For example, the Texas Government Code does not require reporters to automatically record every proceeding[] but provides that the court reporter will take notes of testimony "on request." Tex. Gov't Code [Ann.] § 52.046(a)(2) . . . . A litigant who fails to request that the reporter record pretrial proceedings risks waiver of any complaint with respect to error occurring during those proceedings. *See, e.g.*, *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding) (discovery hearing); *4M Linen & Unif*[.] *Supply Co. v. W.P. Ballard & Co.*, 793 S.W.2d 320, 322–23 (Tex. App.—Houston [1st Dist.] 1990, writ denied) [(op. on reh'g)] (hearing on plea in abatement); *Christie v. Price*, 558 S.W.2d 922, 923 (Tex. . . . App.—Texarkana 1977, no writ) (plea of privilege).

*Id.* at 370–71. This court has previously cited *Piotrowski* for the proposition that "parties must exercise diligence in ensuring that a sufficient record is before the court

on appeal." *Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc.*, No. 02-12-00512-CV, 2014 WL 5307191, at *4 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (mem. op.).

*Piotrowski* defined diligence as requiring a party to meet the deadline of Section 52.046 in requesting preparation of a record or preservation of a reporter's notes because the reporter's ability to destroy records is self-actuating unless an appellant notifies the reporter that notes should be preserved:

> We conclude that in order to obtain the benefit of Rule 50(e), an appellant must have taken steps to ensure that stale notes are not destroyed as permitted by statute. The Government Code requires the reporter, upon request, to "preserve the notes for future reference for three years from the date on which they were taken . . . ." Tex. Gov't Code [Ann.] § 52.046(a)(4) . . . . By negative implication, the statute authorizes reporters to cull stale notes from their records after three years when no party has requested otherwise. If a litigant has not requested the reporter to prepare a statement of facts within three years, nor specifically requested that the notes of a proceeding be preserved beyond three years, then the litigant is not free from fault if the notes are destroyed as the statute authorizes. Any other construction of Rule 50(e) leads to untenable results. We cannot conclude that reporters are free to destroy all notes after three years, and any case that takes longer than that requires automatic reversal. We cannot impose a duty upon reporters to determine on their own initiative which matters lasting over three years involve a "live" controversy and therefore should be preserved. The Government Code does not support the imposition of such a duty; further, reporters are not in a position to make such a legal determination. Nor should we impose a duty on the appellee to preserve the record of all proceedings in order to prevent automatic reversal on appeal; it is the party aggrieved by a ruling who must take the steps to ensure proper review.

873 S.W.2d at 371 (footnote omitted).

10

Other than one reference, AutoNation ignores the holding of *Piotrowski*, saying simply that it is distinguishable because of the holding in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). But AutoNation never tells us what distinction *Michiana* created that would render *Piotrowski* inapposite.[3] If AutoNation is actually arguing that *Piotrowski* is no longer good law, that argument fails. As the Dallas Court of Appeals has held, *Michiana* and other supreme court authority have not overruled *Piotrowski*:

> Appellants argue *Piotrowski* is no longer controlling precedent in Texas, citing *Michiana Easy Livin' Country . . .* and *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906 (Tex. 2017). We disagree because neither case overrules *Piotrowski*. In *Michiana*, the supreme court distinguished *Piotrowski* in the context of changes to the rules of appellate procedure. *See Michiana Easy Livin' Country*, 168 S.W.3d at 783. The *Michiana* court did not discuss [R]ule 34.6, [S]ection 52.046(a)(4), or when a litigant is at fault for failing to request a reporter's record. In *Crawford*, the supreme court, citing *Michiana*, discussed *Piotrowski* in the context of determining when a reporter's record is necessary for an appeal. *See Crawford*, 509 S.W.3d at 910. Again, the court did not state it was overruling *Piotrowski*[,] nor did it discuss [R]ule 34.6 or [S]ection 52.046. As an intermediate appellate court, we are bound by supreme[-]court precedent. *Tex*[.] *Office of Comptroller of Pub.* [*Accts.*] *v. Saito*, 372 S.W.3d 311, 315 (Tex. App.— Dallas 2012, pet. denied) (citing *Dall*[.] *Area Rapid Transit v. Amalgamated Transit Union Loc*[.] *No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008)). We also note two of our sister courts applied the *Piotrowski* rule after the supreme court decided *Michiana*. *See Sarro*[ *v. Sarro*, No. 04-15-00392-CV], 2016 WL 3342340, at *3[ (Tex. App.—San Antonio June 15, 2016, no pet.) (mem. op.)]; *Houser*[ *v. McElveen*, No. 13-05-00426-CV], 2010 WL 1256054, at *4[ (Tex. App.—Corpus Christi–Edinburg Apr. 1, 2010, pet. denied) (mem. op. on remand)].

---

[3]AutoNation's reply brief offers no further clarification regarding why *Piotrowski* is inapposite other than to say that it did not address the impact of the bankruptcy stay. This is true but ultimately irrelevant because, as we hold, the stay did not prevent the sending of a preservation notice.

*Geeting v. Dyer*, No. 05-16-00128-CV, 2017 WL 5150981, at *3 (Tex. App.—Dallas Nov. 7, 2017, pet. denied) (mem. op.).

Thus, we begin with the general rule set out by *Piotrowski*: the burden falls on the appellant to preserve the record, and if the appellant allows the three-year time period of Section 52.046 to run without giving the reporter notice to preserve her notes (preservation notice), the appellant is not free from fault and cannot meet Rule 34.6(f)(2)'s precondition to obtain a new trial.

> **2.  Neither the bankruptcy stay nor the trial court's stay triggered by General Motors's bankruptcy freed AutoNation from the obligation to send the court reporter a preservation notice.**

AutoNation tries to slip the noose of *Piotrowski* by extracting brief quotes from cases that say an appellant must exercise diligence to preserve the record and then pivoting off that premise to convince us that because of the unique circumstances of this case, waiting fifteen years to make the request constitutes diligence.[4] Those unique circumstances are (1) that it had but a few weeks to make the preservation

---

[4]Specifically, AutoNation argues that

> [c]ourts analyze the fault element of [Rule] 34.6(f) in terms of whether the appellant's lack of diligence resulted in destruction of the record. *Alvear v. State*, 25 S.W.3d 241, 244 (Tex. App.—San Antonio 2000, no pet.) [(op. on reh'g)] ("A defendant must exercise some diligence to ensure that a record of any error will be available in the event that an appeal is necessary."); *Waites v. State*, No. 06-09-00096-CR, [2010 WL 2477783, at *7] (Tex. App.—Texarkana June 18, 2010, pet. ref'd) [(mem. op.)] ([concluding that appellant] "failed to exercise diligence to secure a full reporter's record, and accordingly, he is not without fault[]").

12

request before General Motors filed bankruptcy and (2) that once that bankruptcy was filed, which triggered an automatic stay under the Bankruptcy Code and resulted in the trial court's staying the case, AutoNation's hands were tied until General Motors's bankruptcy was closed. We are unconvinced that the standard of diligence remains anything other than a timely sending of a preservation notice.

> **a.** **We agree that AutoNation was not at fault for requesting a record in the three weeks between the jury's verdict and the date that General Motors filed bankruptcy.**

AutoNation's first argument is that it cannot be faulted for not sending a preservation notice to the reporter in a three-week period between the time of the jury's verdict and the time that General Motors filed bankruptcy. We agree and are not sure how this argument could be made in view of the three-year deadline in Section 52.046. But it is not a three-week delay that is the question; it is whether it constituted diligence to delay for more than the three years specified in the Government Code to make the request for the record—indeed to delay for fifteen years until General Motors's bankruptcy closed and the trial court lifted its own self-imposed stay. In this argument, we are unpersuaded.

**b.    We reject AutoNation's contention that the automatic stay of the Bankruptcy Code prohibited it from sending a preservation notice to the reporter and freed it from fault in its inability to obtain a reporter's record.**

AutoNation's primary argument regarding why its inaction constitutes adequate diligence is that once General Motors filed bankruptcy, AutoNation stood in peril of violating the automatic-stay provision of the Bankruptcy Code by sending a preservation notice.[5]  Because of the fear of violating the stay, AutoNation argues that it acted reasonably in waiting until General Motors's bankruptcy was closed and the stay ceased to exist before requesting the record.  This premise—that the stay prevented sending the preservation notice—fails.  Further, even if AutoNation had a legitimate concern that sending the notice might violate the stay, AutoNation could have sought permission from the bankruptcy court to send the notice.  Thus, we reject AutoNation's argument that the automatic stay freed it from a finding of fault for its inaction to obtain or preserve the reporter's record.

The filing of a bankruptcy triggered an automatic stay.  *See* 11 U.S.C.A. § 362(a) ("Except as provided in subsection (b) of this section, a petition filed under

---

[5]As we have noted, the bankruptcy court lifted the stay as to AutoNation in 2012.  How this order was obtained and who had notice of it is unclear from the record.  Further, AutoNation claims that no matter this order, it was still stayed from taking any action to continue prosecuting its cross-claim against General Motors.  Our conclusion is that the stay never impeded AutoNation from sending a preservation notice.  Thus, we spend no time in dealing with how or whether the bankruptcy court's 2012 lifting of the stay impacted AutoNation's ability to send a preservation notice.

[S]ection 301, 302, or 303 of this title, or an application filed under [S]ection 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities . . . ."). The scope of the stay is specified in various ways depending on the nature of the action being taken. AutoNation references, and we agree, that the provision applicable to it is Section 362(a)(1) of the Bankruptcy Code because that section specifies the stay's impact on judicial proceedings. *See* 11 U.S.C.A. § 362(a)(1). The section specifies that the stay embraces

> *the commencement or continuation, including the issuance or employment of process, of a judicial . . . action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

*Id.* (emphasis added). Thus, the standard created by the terms of Section 362(a)(1) is not one of whether that action has "legal significance" that AutoNation seems to invoke but of whether the act is a "continuation . . . of a judicial . . . action or proceeding." *See id.* The crux of our holding and of our disagreement with AutoNation is that sending a preservation notice to the reporter constitutes such a "continuation."

At bottom, the principle that AutoNation seems to invoke is that a communication requesting that a document already in existence not be destroyed— the reporter's notes—constitutes the continuation of a legal action or proceeding. First, how the preservation notice continues the action is unexplained; after all, the request does not ask the reporter to take an action but to refrain from taking an

15

action, i.e., to simply preserve the status quo. Second, the notice does no more than inform the reporter of the case's status. In our view, neither act violates Section 362(a)(1).

Caselaw interpreting the Bankruptcy Code shows why AutoNation does not have a refuge in the automatic stay. For example, the Bankruptcy Appellate Panel of the Ninth Circuit dealt with the issue of whether a stay had been violated when a party requested continuances and attended status hearings in the prepetition state-court action. *In re Perryman*, 631 B.R. 899, 901 (B.A.P. 9th Cir. 2021). *Perryman* held that the act of providing the state court with information or asking the court to continue a matter because of a bankruptcy did not violate the stay:

> Perryman argues that the continuances for the Request for Order constituted continued pursuit of the matter and violated the automatic stay. We disagree.
>
> We equate a continuance like this to a postponement of a foreclosure sale. The Ninth Circuit Court of Appeals has held that a creditor's postponement and rescheduling of a foreclosure sale after a debtor files a bankruptcy petition maintains the status quo and does not violate the automatic stay. *First Nat'l Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316, 1318–19 (9th Cir. 1981) (holding that a preconfirmation postponement of a prepetition foreclosure sale merely maintains the status quo and is consistent with the purpose of the automatic stay); *Mason-McDuffie Mortg. Corp. v. Peters (In re Peters)*, 101 F.3d 618, 620 (9th Cir. 1996) (extending *Roach* to postconfirmation postponements of foreclosure sales).
>
> We decline Perryman's invitation to interpret "continuation of a judicial action" in [Section] 362(a)(1) to include a "continuance" or status hearing in a stayed nonbankruptcy proceeding to determine if the automatic stay still affects that proceeding. Continuances and status hearings in prepetition nonbankruptcy court matters pending further

16

bankruptcy developments are commonplace and do not constitute prosecution of the matter. "Continuances like these keep the matter against the debtor 'on hold' consistent with the stay; they do not advance the matter in the creditor's favor." *In re Welsch*, 602 B.R. 682, 686 (Bankr. N.D. Ill. 2019) (holding that continuances in a prepetition domestic[-]relations proceeding did not violate the automatic stay); *In re Cobb*, 88 B.R. 119, 120 (Bankr. W.D. Tex. 1988) (holding that a status hearing does not violate the automatic stay because it does not move the case forward to a judicial determination).

This is consistent with *Eskanos*[ *& Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002)]. In *Eskanos*, the creditor commenced a collection action against the debtor in state court postpetition. 309 F.3d at 1212. One month later, the creditor dismissed the action. *Id.* In reviewing [Section] 362(a)(1), the Ninth Circuit Court of Appeals found that the statute "prohibits the continuation of judicial actions," which "includes the maintenance of collection actions filed in state court." *Id.* at 1214. The court held that [Section] 362(a)(1) imposes an affirmative duty to "discontinue" postpetition collection actions, meaning either to dismiss or stay such actions[] or risk possible sanctions for willful violations of [Section] 362(a)(1) under [Section] 362(k)(1). *Id.* at 1214–15 (applying former [Section] 362(h)). Thus, the creditor's actions of not taking the debtor's phone calls about the bankruptcy filing, refusing to stay the collection action, and failing to explain its delay in dismissing it violated the automatic stay and warranted sanctions. *Id.* at 1215.

*Id.* at 903–04 (footnote omitted).

Other courts reiterate that not every communication or action in a state-court suit filed against a bankruptcy debtor violates the automatic stay. *In re Hernandez* dealt with whether the appellee had violated the bankruptcy stay by "filing documents in [a receivership], including the documents necessary to retain counsel to represent the [r]eceiver in the [b]ankruptcy [a]ction." Nos. 23-cv-01730, 23-bk-10886, 2024 WL 3638033, at *2 (C.D. Cal. Aug. 2, 2024) (order). *Hernandez* held that the contention was frivolous:

17

Appellees' request for approval and confirmation of counsel (and related documents) in the Receivership Action constitutes permissible conduct that falls outside the scope of the automatic stay. The Ninth Circuit has recognized[ that]

> [t]he purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment[,] and foreclosure actions. . . . The automatic stay also prevents piecemeal diminution of the debtor's estate. . . . The automatic stay does not necessarily prevent all activity outside the bankruptcy forum.

. . . *Roach*, 660 F.2d [at] 1318–19 . . . . Litigation activity that "merely maintain[s] the status quo[] and [does] not harass, interfere[,] or gain any advantage" in the prepetition proceedings "is consistent with the purposes of the automatic[-]stay provision" and [is] not sanctionable. *Id.* at 1319; *see also* . . . *Perryman*, 631 B.R. [at] 901 . . . (recognizing conduct such as "[r]equesting continuances and attending status conferences do not constitute continuation of the prepetition action for purposes of the automatic stay"). The Debtor's argument is frivolous and lacks merit.

Similarly, the Receiver's filing of its February 2023 Monthly Accounting in the Receivership Action "merely maintained the status quo, and did not harass, interfere[,] or gain any advantage[]" and did not violate the automatic stay. *See* . . . *Roach*, 660 F.2d at 1319.

*Id.*

AutoNation does not cite any authority that discusses the limits of the automatic stay as described in the quoted opinions.[6] But we conclude that the principles outlined in the quotes are dispositive. The first applicable principle is that an act that merely preserves the status quo is not a violation of the automatic stay. A preservation notice that notifies a reporter not to destroy her records does no more

---

[6]To the contrary, AutoNation's brief catalogs cases dealing with judicial acts that violate the stay but does not cite any case exploring the limitations of the stay.

18

than preserve the status quo—the records simply continue to exist. Further, *Perryman* held that participating in a status conference did not violate the stay, i.e., simply informing a state court of a case's status is not an act that moves the case along. Here, sending the reporter a preservation notice would have done nothing more than inform the reporter of the case's status and would not have done anything to move the case forward. It would not have initiated the appellate process or produced any action that could possibly have resulted in judicial relief. We disagree that AutoNation can shield itself from the fault that follows from failing to send a preservation notice by claiming that this act would have violated the bankruptcy stay.[7]

Even if we accepted AutoNation's argument that sending the preservation notice would have violated the automatic stay, its argument—that this situation placed it on the horns of a dilemma of doing nothing or violating the stay—is still unpersuasive. If AutoNation had a legitimate fear that a preservation notice might violate the stay, it had an option open other than sitting by, letting the clock run out, and allowing the reporter's notes to be destroyed. It could have requested the bankruptcy court in which General Motors's bankruptcy was filed to lift whatever stay

---

[7]AutoNation describes itself as being in special peril of a stay violation because of its cross-claim against General Motors and argues that any action it took could have been considered a continuation of the prosecution of that claim rather than an action to defend against the claims that Mitchell had brought against it. AutoNation reiterates this argument in its reply brief and argues that even though the bankruptcy court lifted the stay between it and Mitchell, the stay still impacted its ability to continue the pursuit of its cross-claim against General Motors. That premise does not affect our holding because of our conclusion that sending a preservation notice would not have violated the stay.

existed to facilitate the sending of a preservation notice. *See* 11 U.S.C.A. § 362(d). If the bankruptcy court had denied that request, perhaps AutoNation could argue that it had acted with diligence and was excused from sending a preservation request, but that is not the situation before us.

### c. The fact that an item not filed with the court may still violate a stay in some circumstances does not excuse AutoNation's failure to send a preservation notice to the reporter.

In its next argument, AutoNation contends that although the preservation notice would not be filed with the court, it "still constitute[d] 'proceedings' stayed by the federal bankruptcy stay and analogous state[-]court stays." This argument begs the question. As we have outlined in detail, the essence of the question of whether an act violates the stay is whether it continues a legal action and alters the status quo. It is the nature of the act and not the receptacle that the communication ends up in that is central. Thus, AutoNation's filing distinction is true but immaterial.

Indeed, the primary case that AutoNation relies on makes this distinction. In *Tibbetts v. Gagliardi*, a party's insurance company was placed in receivership. 2 S.W.3d 659, 662 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). That fact triggered a stay that the opinion described in the following terms:

> We note that the Texas Insurance Code mandates an automatic stay on proceedings when an insurance company is placed in receivership. *See*

20

Tex. Ins. Code Ann. art. 21.28–C, § 17 . . . ;[8] *Burrhus v. M & S Mach. & Supply Co., Inc.*, 897 S.W.2d 871, 873–74 (Tex. App.—San Antonio 1995, no writ); *Willard v. Davis*, 881 S.W.2d 907, 911 (Tex. App.—Fort Worth 1994, orig. proceeding). Specifically, the code provides the following:

> *All proceedings* in which an impaired insured is a party or is obligated to defend a party in any court in this state, except proceedings directly related to the receivership or instituted by the receiver, *shall be stayed for six months and any additional time thereafter as may be determined by the court* from the designation of impairment . . . .

Tex. Ins. Code Ann. art[.] 21.28–C, § 17 . . . (emphasis added). A stay under this provision of [the] Insurance Code is analogous to a bankruptcy stay. *Burrhus*, 897 S.W.2d at 872. An automatic bankruptcy stay prohibits the beginning or continuing of any judicial actions or proceedings against the debtor during the pendency of bankruptcy proceedings. *See* 11 U.S.C.[A.] § 362(a)(1) . . . .

*Id.* at 664. *Tibbets* held that the stay in combination with Rule 11 agreements showed that a party's counsel was not consciously indifferent by not sending an expert report during the period of the stay and that the trial court erred by dismissing the case for not sending the expert report during the period of the stay. *Id.* at 664–65. In line with our discussion in the previous section, the notice to the reporter under Section 52.046 is not a continuation of a judicial action unlike, as *Tibbets* held, the sending of expert reports, which would be. It was the fact that the sending of the report constituted a continuation of the action—and not that the report did not have to be filed—that was the basis of the holding in *Tibbetts*. *Id.*

---

[8]We note that Article 21.28–C, § 17 has been repealed. *See* Act of May 12, 1971, 62nd Leg., R.S., ch. 360, § 1, 1971 Tex. Gen. Laws 1362, 1371, *repealed by* Act of May 24, 2005, 79th Leg., ch. 727, § 18(a)(6), 2005 Tex. Gen. Laws 1752, 2187.

AutoNation also cites *Goetsch v. Rolls*, No. 02-20-00263-CV, 2021 WL 733090 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.). The holding from *Goetsch* that AutoNation cites involves a question of whether the stay created by the filing of a receivership for an insurance company impacted the deadline to send the expert report because the stay provision referenced only the "proceeding." *Id.* at *4 (citing Tex. Ins. Code Ann. § 462.309(b) ("The stay applies to each party to the proceeding and the proceeding is stayed for all purposes.")). *Goetsch* held that the stay provision's language was broad and encompassed the act of sending the report.[9] *Goetsch* involves the terms of a specific statute that is not in issue before us and does not undermine the conclusion outlined above that AutoNation was not prohibited from sending the reporter a preservation notice.

---

[9]*Goetsch* specifically noted that

> according to the Healthcare Parties, "proceeding" in Section 462.309(b) does not include the expert-report deadline because such reports are not filed with the court. But nothing in the plain language of Section 462.309 or the common usage of the word proceeding indicates that the stay is limited to filings or to only those portions of the proceeding requiring "judicial involvement," as argued by the Healthcare Parties. *See Proceeding*, Black's Law Dictionary (11th ed. 2019) (defining proceeding as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"). Instead, "all purposes" of an implicated proceeding are stayed. Tex. Ins. Code Ann. § 462.309(b).

2021 WL 733090, at *4 (footnote omitted).

### d. The trial court's stay order did not free AutoNation from an obligation to send the reporter a preservation notice.

Next, AutoNation argues that the trial court's stay order so put the litigation to sleep that AutoNation could safely operate under an assumption that it had to do nothing to preserve its rights. Specifically, it argues that "because the file was closed, the matter stayed, and the case put on the inactive docket, AutoNation would have every reason to believe that all such deadlines were stayed, and it was required to refrain from further action." Applying the rationale of *Piotrowski*, we reject this argument.

First, AutoNation never explains how the trial court's order "required [it] to refrain from further action." The trial court's stay did not prohibit AutoNation from filing documents in the case. Thus, its argument that it would have disobeyed an order by sending the reporter a preservation notice is made of whole cloth.

The argument is also no more persuasive than its earlier argument that the automatic stay assured AutoNation that it could ignore the need to notify the reporter not to destroy her notes. The rule of *Piotrowski* places the burden on the appellant to make the Section 52.046 preservation request because that party has the clearest knowledge of what is occurring. 873 S.W.2d at 370–71. The duty is not on the reporter because the supreme court refused to "impose a duty upon reporters to determine on their own initiative which matters lasting over three years involve a 'live' controversy and therefore should be preserved." *Id.* at 371. Here, AutoNation's argument would

23

place the duty on the court reporter that *Piotrowski* holds the reporter should not bear, i.e., AutoNation would require the reporter to inquire of a case's status before destroying notes. To accept AutoNation's argument would create exactly the situation that *Piotrowski* wanted to avoid—an automatic reversal because no one had a duty to take action to prevent destruction of a reporter's notes within Section 52.046's deadline. The trial court's stay order did not stop the clock ticking under Section 52.046, and the duty held to exist by *Piotrowski* establishes that the trial court's stay order did not free AutoNation from having to comply with the deadline.

To support its contention, AutoNation again cites *Tibbetts*, 2 S.W.3d at 662. We have already discussed *Tibbetts*'s holding that the sending of an expert report was stayed because it would have constituted the continuation of a judicial action. We have detailed why a request to preserve the reporter's notes does not constitute such a continuation. Thus, *Tibbetts* is of no aid to AutoNation.

### e. AutoNation cannot rely on *Banks v. State* to argue that it was free to ignore Section 52.046's deadline.

In a last-ditch effort to avoid Section 52.046's three-year deadline to send a preservation notice, AutoNation cites the opinion in a criminal case from the Dallas Court of Appeals that held a request for a reporter's record made after seven years was adequate. *See Banks v. State*, 312 S.W.3d 42, 45–46 (Tex. App.—Dallas 2008, pet. ref'd). AutoNation argues that it relied on *Banks*'s holding for a rule that "the fault determination when a record is lost or destroyed should be governed by the timeline

24

for requesting the record under Tex. R. App. P. 34.6, not the record retention timeline in the Government Code." But *Banks* involved the interplay of a Rule of Appellate Procedure not applicable to this case and Section 52.046. Its holding is totally inapposite and provides no cover to AutoNation for its failure to comply with Section 52.046.

*Banks* involved Rule of Appellate Procedure 13.6, which on its face alters the time limit of Section 52.046 in a criminal case.[10] In essence, the Dallas Court of Appeals held that Rule 13.6's provisions trumped Section 52.046's:

> In reaching this conclusion, we necessarily reject the State's argument that the duties of the court reporter under [R]ule 13.6 are in conflict with the duties set out in [S]ection 52.046(a)(4) of the [G]overnment [C]ode, requiring the rule to yield to the statute. Section 52.046(a)(4) of the [G]overnment [C]ode requires a court reporter, *upon request*, to preserve the notes for three years from the date on which they were taken. When, as here, the record shows no such request until years after the time limit imposed on the court reporter has passed, the court reporter's duty to retain the record for three years from the time the notes were taken (and ability to destroy it thereafter) under [S]ection 52.046(a)(4) does not arise. Rather, because appellant did not file a notice of appeal or otherwise request that the record be retained until after the time[]line imposed by [R]ule 13.6 had already passed, [R]ule 13.6 applies[,] and the

---

[10]Rule 13.6 provides that

[w]hen a defendant is convicted and sentenced, or is granted deferred adjudication for a felony other than a state jail felony, and does not appeal, the court reporter must—within 20 days after the time to perfect the appeal has expired—file the untranscribed notes or the original recording of the proceeding with the trial court clerk. The trial court clerk need not retain the notes beyond 15 years of their filing date.

Tex. R. App. P. 13.6.

court reporter was under the obligation to file the untranscribed notes with the district clerk to be retained for fifteen years.

*Id.* at 45.

If it is not clear enough from the quote that *Banks* is inapposite, the Dallas court's subsequent discussion of *Banks* establishes its inapplicability to our facts. In *Geeting v. Dyer*, an appellant in a civil case argued that *Banks* altered *Piotrowski*'s rule defining diligence as meeting Section 52.046's deadline. 2017 WL 5150981, at *3. *Geeting* summarily dismissed this argument:

> Finally[,] appellants argue this [c]ourt declined to follow the *Piotrowski* rule in *Banks* . . . , and we should do likewise in this appeal. *Banks* is a criminal case involving an out-of-time appeal in which there was no dispute [that] the court reporter's notes were lost or destroyed and [that] the court reporter had died. On remand, we considered whether the appellant was at fault for the missing records under . . . [R]ule 13.6. *See Banks*, 312 S.W.3d at 44–45; [*see also*] Tex. R. App. P. 13.6. Without discussing *Piotrowski*, we concluded that the appellant was not at fault because he [had] filed his notice of appeal within fifteen years of his conviction. *Id.* at 45. Our opinion in *Banks* is about [R]ule 13.6, which is not at issue in the appeal before us today.

*Id.* (footnote omitted). *Banks* simply is of no aid to AutoNation.

### 3. The trial court did not err by denying AutoNation's motion for new trial.

We have analyzed and rejected AutoNation's arguments that it was not at fault for waiting fifteen years to request the reporter's record in this matter and specifically that it failed to send a preservation notice by the deadline set out in Section 52.046. The trial court properly rejected AutoNation's claim that it was without fault in the

26

lapse of time that resulted in the destruction of the reporter's notes from which a reporter's record could be produced. *See* Tex. R. App. P. 34.6(f)(2).

We overrule AutoNation's first issue.[11]

**B.     We lack a sufficient record to review AutoNation's second issue that the trial court's judgment awarded damages based on an erroneous measure of damages.**

In its second issue, AutoNation argues that the trial court's judgment is erroneous because it includes damages of $27,406.25 awarded by the jury for the "loan balance on the vehicle." As we understand AutoNation's issue, the award is for an improper measure of damages and is erroneous as a matter of law. Without a record of the testimony, we have no idea what evidence was admitted that might have raised the loan-balance measure as a proper measure of damages. And without a record of the charge conference, we have no idea how this measure came to be in the charge. We lack a sufficient record to review this issue.

Though not phrased in these terms, what we think that AutoNation is arguing is that the question submitting the "loan balance" measure was immaterial because it was a defective measure of damages.[12] But the premise of AutoNation's argument—

---

[11]Because our resolution of the fault question is dipositive, we do not reach AutoNation's arguments regarding whether the record shows that it has met the other requirements of Rule 34.6(f). *See* Tex. R. App. P. 47.1.

[12]The parameters of whether a question is immaterial and should be disregarded was discussed as follows by the First Court of Appeals:

27

that a "loan balance" measure was legally defective as a matter of law—is open to question and is a question that we cannot resolve without a record. *Remigio v. Armenta*, No. 02-21-00298-CV, 2022 WL 2526943, at *2 (Tex. App.—Fort Worth July 7, 2022, no pet.) (mem. op.) ("It is [a]ppellants' burden to bring forward a sufficient record showing error committed by the trial court." (citing *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.))).

---

> A trial court's judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any . . . ," meaning that a trial court should enter its judgment in accord[ance] with the jury's findings. Tex. R. Civ. P. 301. An exception exists when a jury finding is made in response to a question that is "immaterial": a trial court may disregard a jury finding on an immaterial question when entering judgment. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)[ (op. on reh'g)]; *Fazio v. Cypress/GR Hous*[.] *I, L.P.*, 403 S.W.3d 390, 394, 397 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc [op. on reh'g]).
>
> A jury question is immaterial in several instances, one of which is when the question should not have been submitted. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 506 (Tex. 2018)[ (op. on reh'g)]; *Spencer*, 876 S.W.2d at 157. A question should not be submitted to the jury when the question is "legally defective" or when the question submits a theory that otherwise fails as a matter of law. *See Fazio*, 403 S.W.3d at 394–96 (holding that jury question was "legally defective" because it submitted improper measure of damages); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 93 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that jury question on malicious-prosecution claim should not have been submitted because claim "was foreclosed as a matter of law"); *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27–28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that jury question on breach of contract should not have been submitted because alleged contract failed for lack of consideration).

*Ruff v. Univ. of St. Thomas*, 582 S.W.3d 707, 711 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

The premise of AutoNation's argument is that only two measures of damage were available to Mitchell on her DTPA claim based on misrepresentations about the vehicle. AutoNation argues that those measures are the ones set out in *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988). *Walters* established the standard measures of damage as follows:

> The dispositive issue in this case is the correct measure of damages. In a DTPA case, the plaintiff is entitled to actual damages. This court has defined actual damages as those recoverable at common law. Under common law, there are two measures of damages for misrepresentation: (1) the "out of pocket" measure, which is the "difference between the value of that which was parted with and the value of that which was received"; and (2) the "benefit of the bargain" measure, which is the difference between the value as represented and the value actually received. The DTPA permits a plaintiff to recover either the "out of pocket" or the "benefit of the bargain" damages, whichever is greater.

*Id.* (citations omitted).

But the measures of damages described in *Walters* are not immutable. Recently, the Fourteenth Court of Appeals held that other measures may be applied:

> As this court has also stated, recovery under the DTPA is not limited exclusively to only the out-of-pocket or benefit-of-the-bargain measure of damages. *See Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 754 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Instead, DTPA damages may include recovery for "the total loss sustained [by the consumer] as a result of the deceptive trade practice." *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex. 1992). Accordingly, DTPA damages include all related and reasonably necessary expenses, and a plaintiff is entitled to recover other damages to ensure that he is made whole. *See Manon*, 162 S.W.3d at 754.

*BMW Preventative Maint., Inc. v. Phillips*, No. 14-24-00562-CV, 2025 WL 2399153, at *10 (Tex. App.—Houston [14th Dist.] Aug. 19, 2025, no pet. h.) (mem. op.) (footnote omitted).

Beyond this holding, *Phillips* also addressed the proof that established the diminution of the value of an auto. *Id.* at *11. It considered the auto's purchase price in assessing value. *Id.* Thus, proof of what was paid for a vehicle may implicate its value, and proof of a loan value may not be so far awry that its proof is immaterial to damages. Indeed, even AutoNation appears to concede that the "loan balance" might be a proper measure of damages by noting that "[i]n other words, in the absence of a showing that the post-purchase value of the vehicle was $0.00, Mitchell is not entitled to an award of the remaining balance of the vehicle." Here, we have no idea if there was proof that the "post-purchase" value was $0.00. Muddying the waters even further, the clerk's record contains a "Final Order Granting Subchapter M Relief," which ordered General Motors to repurchase the vehicle and which further ordered "that the refund shall be paid to Complainant and the lien holder as their interests appear." Mitchell listed this document on her trial exhibit list. How this order may have impacted the measure of damages that Mitchell sought is another mystery unresolvable without a reporter's record.

Compounding these mysteries, we have no idea how the loan-balance measure came to be in the court's charge. General Motors's proposed charge submitted a measure based on the benefit of the bargain. Mitchell's proposed charge made no

30

mention of "loan balance" in its damage submission. And the record contains nothing showing the trial court's rulings on the proposed charge. *See* Tex. R. Civ. P. 273 (allowing the trial court to submit or refuse to submit proposed questions, definitions, and instructions). Obviously, we do not have a transcript of the charge conference to know how the "loan balance" measure came to be in the charge. As Mitchell emphasizes, if the "loan balance" measure was submitted without AutoNation's objection, it waived a claim of error that the charge submitted an improper measure of damages. *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 785 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

For us to determine (1) whether the record contains evidence making the loan balance a viable measure of damages and (2) how that measure came to be in the charge, we need a reporter's record. Thus, the questions present issues that depend on the state of the evidence that cannot be reviewed without a complete record, including a reporter's record. *In re B.J.W.*, No. 05-17-00253-CV, 2018 WL 3322882, at *2 (Tex. App.—Dallas July 6, 2018, no pet.) (mem. op.) (citing *Willms v. Americas Tire Co.*, 190 S.W.3d 796, 803 (Tex. App.—Dallas 2006, pet. denied)).

We overrule AutoNation's second issue.

## C. We lack a sufficient record to review AutoNation's third and fourth issues.

In its third and fourth issues, AutoNation makes the following arguments:

- The judgment's award of lost-income damages is not supported by legally and factually sufficient evidence.

31

- The jury's liability and damage findings are not supported by legally and factually sufficient evidence, and the damage awards are excessive.

Absent a reporter's record, we lack a sufficient record to review these issues. Simply,

> The Texas Supreme Court has held that[] "when an appellant complains of the factual or legal sufficiency of the evidence, the appellant's burden to show that the judgment is erroneous cannot be discharged in the absence of a complete or an agreed statement of facts." *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) . . . (footnote omitted) (citing *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968) . . . ). The issue is not limited to whether this [c]ourt "can be convinced by the missing testimony to reverse the trial court's judgment." *Gavrel*[ *v. Rodriguez*], 225 S.W.3d [758,] 763 [(Tex. App.—Houston [14th Dist.] 2007, pet. denied)]. Instead, the issue is "whether [the missing] testimony is necessary to the resolution of the appeal." This is because "[t]he 'appeal's resolution' encompasses both affirmance and reversal of the trial court's judgment." *Id.* As a result, in the absence of a complete record, "it is impossible to review all the evidence presented to the [factfinder] or to apply the appropriate evidentiary sufficiency standard of review." *Id.*

*Coplin v. Mann*, 622 S.W.3d 586, 591 (Tex. App.—Texarkana 2021, no pet.).

Because the fault for providing a sufficient record is at AutoNation's feet, we overrule its third and fourth issues.[13]

---

[13]In its reply brief, AutoNation asserts that Mitchell's witness list did not identify an expert to testify about lost profits and that we must assume that the absence of an expert listed as a witness meant that no expert testified. Thus, it concludes that the absence of expert testimony rendered an award of lost profits to be without evidentiary support. This argument turns on two points of speculation that we cannot resolve without a reporter's record. First, perhaps, an expert did testify. Second, we have no idea how Mitchell testified about lost profits and what objections were made to that testimony. Without a record, we have no idea whether that testimony might have constituted some evidence to support the damage award.

**D.** **We cannot grant AutoNation's request to remand this appeal under Texas Rule of Appellate Procedure 43.3 in the absence of reversible error.**

In support of its fifth issue, AutoNation invokes our power to remand a case under Texas Rule of Appellate Procedure 43.3 and argues that

> [General Motors's] bankruptcy was an unprecedented event in American history. By the time the verdict in this matter occurred, neither [AutoNation] nor [Mitchell] could have anticipated that a bankruptcy spanning more than a decade of the defendant/cross-defendant would occur.
>
> If this [c]ourt disagrees with AutoNation and holds that AutoNation was at fault for not taking legally significant steps to preserve the record during the stay, then remand in the interest of justice is warranted.[14]

The fundamental flaw in this request is that our power to remand a case under Rule 43.3 must be predicated on a conclusion that there is "error warranting reversal in the trial court's judgment." *Wall v. State Farm Lloyds*, 573 S.W.3d 281, 288 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also In re Estate of Clifton*, No. 05-24-00079-CV, 2024 WL 4354992, at *3 (Tex. App.—Dallas Oct. 1, 2024, no pet.) (mem. op.) ("[Appellant] has not shown reversible error, so Rule 43.3 has no application

---

[14]Rule 43.3 provides that

> [w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when:
>
> (a) a remand is necessary for further proceedings; or
>
> (b) the interests of justice require a remand for another trial.

Tex. R. App. P. 43.3.

here."). We hold that AutoNation is at fault under Rule 34.6(f) and that without a record, we cannot review the other issues that it raises. Because there is no reversible error, we have no power to remand.

We overrule AutoNation's fifth issue.

## IV. Conclusion

Having rejected AutoNation's first issue arguing that its conduct in untimely requesting the reporter's record was without fault; having rejected its second, third, and fourth issues because we lack a sufficient record to review them; and having rejected AutoNation's request that we remand this matter for a new trial because we have concluded that no reversible error exists in the record, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: October 9, 2025